**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**KENISHA BLACK**                                                                       **PLAINTIFF**

**v.**                                                     **CIVIL ACTION NO.: 3:23-cv-426-DPJ-ASH**

**MISSISSIPPI DEPARTMENT OF**
**REHABILITATION SERVICES; AND**
**CHRIS M. HOWARD, INDIVIDUALLY**                                   **DEFENDANTS**

<u>**PLAINTIFF'S MEMORANDUM IN BRIEF IN SUPPORT OF HER RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Ms. Kenisha Black ("Plaintiff") has filed suit against her former employer

Mississippi Department of Rehabilitation Services ("MDRS") and supervisor Chris

Howard ("Howard") (collectively referred to as "Defendants"), for claims of Title VII race

and sex discrimination, Tite VII retaliation, and tortious interference because she was

not considered for nor selected for the Director of Client Services position at MDRS.

Defendants have collectively filed a Motion for Summary Judgment on all claims.

Nonetheless, Defendants' Motion should be denied for the Title VII race and sex

discrimination claim because not only has Plaintiff established a *prima facie* case for

'race plus' discrimination, but she has also shown that Defendants' decision to select

another candidate was pretextual because the selected candidate did not meet the

minimum qualifications necessary for the job. Furthermore, Defendants' Motion for

Summary Judgment regarding Plaintiff's retaliation claim should also be denied

because Defendant retaliated against Plaintiff at its first opportunity to do so. Lastly,

Defendants' Motion for Summary Judgment for Plaintiff's tortious interference claim

should also be denied because Howard's ignorance of the law, despite having in house

counsel at his convenient disposal, could allow a reasonable jury to conclude that he

acted in bad faith. Furthermore, such issues presented in this case are no stranger to MDRS, as previous litigation, coupled with this present case, unearthed a pattern and practice of their employment decisions not complying with state law. For these reasons above, Defendant's Motion for Summary Judgment should be denied.

I.    **STATEMENT OF FACTS**

Plaintiff was hired on April 15, 2004, as a Vocational Rehabilitation Counselor at the Mississippi Department of Rehabilitation Services (MDRS). [Doc. 38-1 at p. 10]. During July 2015, Plaintiff was promoted to the position of Manager. *Id.* at p. 7. Around December 2021, the Director of Client Services resigned. *Id.* at p. 18. In February 2022, Executive Director Chris Howard (white male) appointed Charles Fairley (black male) as the new Director of Client Services. *Id.* at p. 21.

However, Plaintiff contends it was well known she was interested in the position, yet the position was not posted. *Id.* at p. 21. Moreover, Plaintiff contends Mr. Fairley has no direct work experience related to the position, and he has fewer qualifications and less education than Plaintiff does. *Id.* at p. 26.

On August 3, 2022, Plaintiff filed an EEOC Charge against MDRS. *Id.* at p. 31. On January 6, 2023, in response to Plaintiff's Charge, MDRS submitted a Position Statement to the EEOC. [Doc 38-8]. MDRS's Position Statement alleges that "The Director of Client Services for the Office of Vocational Rehabilitation is classified as a non-state service position.   This exclusion of state service is based upon the following as stated by statute in Mississippi Code Annotated § 25-9-107(c)(xvi): The State Personnel Board shall exclude top-level positions if the incumbents determine and publicly advocate substantive program policy and report directly to the agency head…" *Id.*

MDRS's Position Statement further alleges, "As Executive Director, Mr. Howard has the authority to appoint a candidate to a position that is classified as non-state service based on the exclusion listed above…" *Id.*

Plaintiff contends however that according to Mississippi Code Title 37 – Education Chapter 33 – Civilian Vocational Rehabilitation – Vocational Rehabilitation Law 37-33-15 (Universal Citation) – Administration of Office of Vocational Rehabilitation; general powers and duties of Director; states the following: The Office of Vocational Rehabilitation established by Section 37-33-153 shall be administered by a director appointed by the executive director in conformity with policy adopted by the department. The Director of the Office of Vocational Rehabilitation shall devote his or her full time to the administration of vocational rehabilitation. In carrying out his or her duties under the Vocational Rehabilitation Law, the director:

> (a) Shall, with approval of the executive director, make regulations governing the protection of records and confidential information, the manner and form of filing applications, eligibility, and investigations and determinations thereof for vocational rehabilitation services, procedures for fair hearings, and such regulations as are found necessary to carry out the purposes of that law.

> (b) Shall, with the approval of the executive director, establish appropriate subordinate administrative units within the office.

> (c) Shall, with the approval of the executive director, recommend for appointment such personnel as may be necessary for the efficient performance of the functions of the offices.

*See* Miss. Code Ann. §37-33-153.

Furthermore, according to the structure of positions under the Office of Vocational Rehabilitation, the Director of Client Services position is a subordinate employee and serves under the leadership of the OVR Director. [Doc. 38-8 at p 25]. However, the executive director does not have appointing authority under the state VR program according to Miss. Code Ann. §37-33-15. Rather, the executive director has appointing authority in the selection of the OVR Director.

Moreover, according to the Vocational Rehabilitation Law, the OVR Director has recommending authority followed by the Executive Director having approval authority to approve or disapprove the OVR Director's recommendation for the selection of position among his or her subordinate units, which includes the Director of Client Services position. Plaintiff contends therefore that Mr. Howard did not have the authority to appoint Mr. Fairley to the position of Director of Client Services.

## II.     STANDARD OF REVIEW

District courts may properly grant summary judgment only if, viewing the facts in the light most favorable to the non-movant, the movant shows that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Summary judgment shall only be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett.*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of identifying the basis

for its belief that there is an absence of a genuine issue for trial and pointing out those portions of the record that demonstrate such an absence. *Id.*

Once the movant has made this initial showing, the nonmoving party must present competent summary judgment evidence to show a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Such evidence consists of specific facts that show a genuine fact issue, such that a reasonable jury might return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L.Ed.2d 176 (1962).

When reviewing all of the evidence in the record, however, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-555, 110 S.Ct. 1331 (1990); *Liberty Lobby*, 477 U.S. at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Liberty Lobby,* 477 U.S. at 255. Although the Court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *See* 9A C. Wright & A. Miller, Federal Practice and Procedure §2529, pp. 299. That is, the Court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested

witnesses." *Id.,* at 300; *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000). In essence, though, the inquiry under summary judgment is the same as a judgment as a matter of law: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Liberty Lobby,* 477 U.S. at 251-52.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. *Hampton v. Gannett Co., Inc.*, 296 F.Supp.2d 716, 719 (S.D. Miss., 2003). It is improper for the district court to "resolve factual disputes by weighing conflicting evidence,… since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the Court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962).

## III.  LEGAL ANALYSIS

### a. Plaintiff has established a *prima facie* claim for Title VII race and sex discrimination, and a reasonable jury could conclude that Defendant's proffered reason for not extending the position to Plaintiff was pretextual.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee because of the employee's race, color, religion, sex, and national origin. 42 U.S.C. §2000e-2(a)(1). The purpose of Title VII is to promote hiring on the basis of job qualifications, rather than on the basis of race or color. *See Ricci v. DeStefano,* 557 U.S. 557, 129 S. Ct. 2658, 174 L. Ed.2d 490 (2009). Certain

6

discriminatory actions, such as failure to hire, termination, failure to promote, or demotion are always serious enough to create potential liability under federal anti-discrimination statutes, including Title VII and §1981.[1]

Congress has imposed Title VII liability on employers for unintentional discrimination to rid the workplace of practices that are fair in form, but discriminatory in operation. *Id.* In *Babb v. Wilkie*, the Supreme Court explained that the "normal definition" of "discrimination" is "differential treatment." 589 U.S. 399, 405. 140 S.Ct. 1168, 206 L.Ed.2d 432 (2020) (quoting *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 174, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005); internal quotation marks omitted). In *Bostock*, the Court likewise observed that to "discriminate" typically means simply "'[t]o make a difference in treatment or favor (of one as compared with others)." *Bostock v. Clayton County*, 590 U.S. 644, 657, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020) (quoting Webster's New International Dictionary 745 (2d ed. 1954)).

Prohibited discrimination occurs when an employer intentionally treats a person worse because of a protected characteristic. *Murray v. UBS Sec., LLC*, 601 U.S. 23, 34, 144 S. Ct. 445, 453 (2024). In elaborating on the meaning of discrimination, *Bostock* made clear that a lack of animosity is irrelevant to a claim of discrimination under Title VII. *Id.*, at 633, 140 S.Ct. 1731; *see also Automobile Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199, 111 S.Ct. 1196, 113 L.Ed.2nd 158 (1991) (explaining that a prohibition on discrimination "does not depend on why the employer discriminates" or the presence of "malevolent motive"). Ultimately, the Title VII inquiry is whether the

---

[1] SANDRA F. SPERINO & JAROD S. GONZALEZ, EMPLOYMENT DISCRIMINATION: A CONTEXT AND PRACTICE CASEBOOK (3rd ed. 2019) at 86.

Defendant intentionally discriminated against the Plaintiff. *Roberson v. Alltel Info.* *Servs.,* 373 F.3d 647, 651 (5th Cir. 2004).

Plaintiff's claims of both race and sex discrimination under Title VII is subject to "a precise scheme, or allocation, of the burdens of proof (both production and persuasion)." See *Cash Distrib. Co. v. Neely*, 947 So.2d 286, 292 (Miss. 2007). This analysis, often referred to as the "McDonnell Douglas burden-shifting framework," proceeds in three steps. *See Id*. at 292-93 (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)).

Concurrently, the Fifth Circuit Court has analyzed employment discrimination claims relying on circumstantial evidence under a three-step, burden-shifting framework. *See Lindsey v. Prive Corp.,* 987 F.2d 324, 326 (5th Cir.1993); *Medina v. Ramsey Steel Co*., 238 F.3d 674, 680 (5th Cir. 2001). Under the first step of this analysis, the employee must raise a genuine issue of material fact as to each element of their *prima facie* case. *See Lindsey,* 987 F.2d at 326. Establishing a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 525, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993).

In the second step of the *McDonnell Douglas* framework, the employer bears "the burden of producing an explanation to rebut the prima facie case—i.e., the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr.*, 509 U.S. 506 (1993) (quotation marks omitted). Notably, the employer's burden at this stage is a "burden of production" only and "can involve no credibility assessment." *Id*. at 509. "This burden of production "necessarily precedes the credibility-assessment stage." *Id*. The Defendant's burden at

the second step is only "to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Id*. "[T]o meet its burden of production under *McDonnell Douglas*, an employer must articulate a nondiscriminatory reason with 'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual." *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).

Typically, the evidence offered by Defendant surrounds the preferred candidate's superior qualifications. *Price v. Federal Express Corp.*, 283 F.3d 715, 722-23, 88 FEP 619 (5th Cir. 2002). If the Defendant offers evidence of the preferred candidate's superior qualifications, the relative strength of the candidates' qualifications becomes relevant at the pretext stage. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347-48, 116 FEP 1582 (5th Cir. 2013) (plaintiff failed to establish pretext where he introduced no evidence regarding selectee's credentials or work experience). The Fifth Circuit has held that a candidate hired who has failed to meet the minimum requirements is sufficient to create a fact issue as to whether Defendant's nondiscriminatory reasons for its employment decisions are pretextual. *Gillaspy v. Dallas Indep. Sch. Dist*., 278 F. App'x 307, 314 (5th Cir. 2008).

The third step of the *McDonnell Douglas* framework is the "credibility-assessment stage." *Id*. At this stage, Plaintiff must present "substantial evidence" that Defendant's asserted reason for terminating them is pretext for discrimination. *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021). Black's Law Dictionary defines pretext as "ostensible reason or motive assigned or assumed as a color or cover for the real reason or motive; false appearance, pretense." Black's Law Dictionary at 1187 (4th ed.1951). "Evidence is

substantial if it is of such quality and weight that a reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). To prevail at this stage, Plaintiff must show that reasonable minds could disagree that these were, indeed, the reasons for [not being hired]." *Salzar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020).

Plaintiff may meet their burden of showing pretext through use of various forms of circumstantial evidence, including evidence of disparate treatment or evidence tending to show that Defendant's "explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Watkins*, 997 F.3d at 283. But employment laws do not transform Federal Courts into human resource managers, so the inquiry is not whether Defendant made a wise or even correct decision to not hire Plaintiff. *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). Instead, "[t]he ultimate determination, in every case, is whether, viewing all of the evidence in light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." *Crawford v. Formosa Plastics Corp. La.*, 234 F.3d 899, 902 (5th Cir. 2000). Thus, evidence must be of sufficient "nature, extent, and quality" to permit a jury to reasonably infer discrimination. *Id.* at 903.

In *Burdine*, the Supreme Court provided a lengthy discussion of relative qualifications. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 258-59, 25 FEP 113 (1981). In *Burdine*, the Supreme Court overruled Fifth Circuit decisions that required the employer to prove that the preferred candidate had a *better* work record than the Plaintiff. *Id.* at 256-57. The Supreme Court returned to the issue of relative qualifications in *Ash.* In *Ash*, the Court rejected the formulation of the Eleventh

Circuit that "'[p]retext can be established through comparing qualifications only when the disparity in qualifications is so apparent as to virtually jump off the page and slap you in the face.'" *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456, 97 FEP 641 (2006). The Court found that this formulation was neither precise nor helpful. *Id.*

Whether the Plaintiff or the person selected had superior qualifications sometimes will be deemed to create a genuine issue of material fact as to whether unlawful discrimination was the real reason plaintiff was not selected for the position. *Durley v. APAC, Inc.*, 236 F.3d 651, 657, 84 FEP 1177 (11th Cir. 2000) (summary judgment for employer reversed because rejected candidate possessed relevant experience that selected candidate did not). Furthermore, Courts have held the position that the question of whether the employer's judgment was reasonable or was instead motivated by improper considerations is for the jury to consider. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396 n.6, 103 FEP 1121 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (2008)) ("at the summary judgment stage the judge's function is not [them]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") Therefore, the Court's role is merely to assess whether the Plaintiff has presented enough evidence for a reasonable jury to accept Plaintiff's claim that the employer made an unlawful business decision. *Id.* Therefore, it is the employee's burden to create a fact dispute as to reasonableness that could give rise to an inference of discrimination. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022).

1. **Plaintiff has proffered evidence showing she has made a *prima facie* case for Title VII "race plus" (race and sex) discrimination.**

Defendant contends that it is undisputed that Plaintiff is a member of a protected class, and that Plaintiff was not selected for the Director of Client Services position at MDRS. [Doc. 39 at p. 7]. However, Defendant contends that Plaintiff's race discrimination claim fails because Plaintiff belongs to the same protected class as the selected candidate for the Director of Client Services position at MDRS because both she and the candidate belong to the same protected class. *Id.*

Nonetheless, Defendant fails to consider that in *Jefferies v. Harris County Community Action Ass'n*, the Fifth Circuit found that the overlap between race and another protected classification, such as Plaintiff's sex, could constitute a separate group protected by Title VII. *See generally Jefferies v. Harris Cnty. Cmty. Action Ass'n,* 615 F.2d 1025 (5th Cir. 1980). The Fifth Circuit Court here analogized to the Supreme Court's decision in *Phillips v. Martin Marietta Corp.*, which defined a protected "sex plus" category, in determining that "discrimination against black females can exist in the absence of discrimination against black men or white women. *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 3 FEP 40 (1971). Plaintiff here in this case is alleging that she faced discrimination from Defendants not solely because of her race or gender but faced discrimination on a basis of the combination of the two. [*See generally* Doc. 38-1]. It is therefore clear that Defendants discriminated against Plaintiff based on the fact that she was a black female, which is different from alleging that she was discriminated solely on the basis of race or solely on the basis of sex. Moreover, it is clear that Howard and MDRS' decision to not select candidate for the Director of Client Services position was motivated by the combination of race and gender because black women

were treated less favorably compared to black men when being considered for the Director of Client Services position at MDRS.

Fifth Circuit case law denotes that a plaintiff raising a failure to promote claim based solely on her race must first establish a *prima facie* case "demonstrating that (1) [s]he was not promoted, (2) [s]he was qualified for the position he sought, (3) [s]he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of [her] race." *Autry v. Fort Bend Indep. Sch. Dist.,* 704 F.3d 344, 347 (5th Cir. 2013).

Similarly, a Title VII plaintiff alleging sex discrimination must show (1) that they are a member of a protected class; (2) that they were qualified for the position sought; (3) they were subject to an adverse employment action; and (4) they were replaced by someone outside their protected class or received less favorable treatment than did a similarly situated individual not in the protected class. *Austen v. Weatherford Coll.*, 564 Fed.Appx. 89, 93 (5th Cir. 2014). Combining both race and sex within the *prima facie* context, it is clear that Plaintiff has established a *prima facie* case for her "race plus" claim of discrimination.

Defendant's Motion for Summary Judgment contends that Plaintiff's claims for race and sex discrimination fail at the second element. [Doc. 39 at p. 8]. In furtherance of supporting such motion, Defendants make an unsubstantiated claim that "Plaintiff's claims fail on the remaining elements" but does not proffer any evidence showing how her claims fail, or why such facts are disputed. Therefore, the remaining elements of Plaintiff's *prima facie* claim are undisputed. *See* Fed. R. Civ. P. 56(e)(2).

To begin, it is clear that Plaintiff has met the first element of her *prima facie* race plus claim because she belongs to a protected class as a black female under a race plus theory of Title VII discrimination. [*See* Doc. 38-1]. The heart of Defendants' motion contends that Plaintiff is unable to meet the second element of her *prima facie* claim for discrimination, which they cite as the need for Defendant to show that she applied for the position in dispute. However, in doing so, Defendants ignore the fact that the Fifth Circuit has held that plaintiffs may state a *prima facie* case despite never applying for the position if "no such [job] notice was ever given, or if it was inadequately circulated." *Sanders v. Mississippi Dep't of Rehab. Servs.*, No. 3:20-CV-830-CWR-LGI, 2022 WL 452402, at *1 (S.D. Miss. Feb. 14, 2022) (quoting *Williams v. DeKalb Cty.*, 577 F.2d 248, 255 (5th Cir.), *on reh'g*, 582 F.2d 2 (5th Cir. 1978). The Fifth Circuit reasoned that '[a] job notice which specifies no deadline provides too easy a means for covertly denying black [women] an opportunity to be considered for promotions, for any such applicant could simply be told that the deadline has passed." *Id.* Because the Southern District Court of Mississippi has further reasoned that a plaintiff "cannot be held accountable for failing to apply or a position that was never open to applications", and updated caselaw *infra* also does not denote that Plaintiff must have applied for the job in order to establish a *prima facie* case for race and sex discrimination, Plaintiff's claims cannot be dismissed because she failed to apply for the position. *See Sanders*, 2022 WL 452402, at *2.

Nonetheless, it is clearly presented by Defendants in their motion for summary judgment that "Howard did not advertise the position, nor did he solicit applications for the vacancy." [Doc. 39 at p. 4]. Additionally, Defendants have also admitted that Howard

did not "seek recommendations from the OVR Director, Lavonda Hart, as she had previously failed and/or refused to provide a recommendation, preferring that the vacancy be competitively advertised." *Id.* (referencing Doc. 38-6 at 8, 14-18; Doc. 38-7 at 8; Doc.38-10 at p. 18-21). Because Defendant has admitted that they did not post the position to be open for applications, it would be unfair to dismiss Plaintiff's claim on the sole argument that she should have applied for the position.

Furthermore, such is also true because Howard knew that Plaintiff was interested in the position. Though Howard initially claimed that he did not know Plaintiff was interested in his deposition, it is clear that such is not the case, considering Plaintiff, amongst others who had expressed interest in applying for the position in 2019, later filed suit regarding such issue. [Doc. 38-4]. This is because in this suit, Plaintiff had sued MDRS previously for not getting this exact position in the past, so there is no chance that Howard could claim that he did not know Black was interested for the position when it became available again in 2021. Because it is clear that Howard has lied about his actual and constructive knowledge of Plaintiff's interest in the position, a reasonable jury could also denote that his lies about the matter could be an inference of pretext.

If, however, this Court finds that Plaintiff has not met her burden in establishing a *prima facie* case for race plus discrimination under Title VII, Plaintiff contends that, at the very least, she has met her burden for her Title VII sex discrimination claims.

Therefore, Defendant's problematic reasoning supporting its motion must be denied.

## 2. Defendant MDRS' legitimate, non-discriminatory reason.

In the second step of the *McDonnell Douglas* framework, the employer bears "the burden of producing an explanation to rebut the prima facie case—i.e., the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr.*, 509 U.S. 506 (1993) (quotation marks omitted). Notably, the employer's burden at this stage is a "burden of production" only and "can involve no credibility assessment." *Id*. at 509. "This burden of production "necessarily precedes the credibility-assessment stage." *Id*. The Defendant's burden at the second step is only "***to introduce evidence*** which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Id*. (emphasis added). "[T]o meet its burden of production under *McDonnell Douglas*, an employer must articulate a nondiscriminatory reason with 'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual." *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).

Defendant contends that its legitimate, non-discriminatory reason for selecting Mr. Fairley for the position is simply because he was "clearly better qualified." [Doc. 39 at p. 10]. However, Defendant provides absolutely no factual basis supporting its assertions that Mr. Fairley is more qualified. *See generally* [Doc. 39 at p. 10-11]. Instead, all Defendant proffers is simply an unsubstantiated claim that Mr. Fairley was clearly better qualified. *Id*. In fact, all Defendant proffers is a snippet of a letter recommending closure of Plaintiff's EEOC charge, but even such snippet does not show ***why*** Fairley was "clearly better qualified." Because Defendant does not offer any

evidence supporting why Mr. Fairley is better qualified for the position, it could be concluded that Defendant has not met its burden of production with sufficient clarity.

Furthermore, prior litigation concerning the same issue provided that Defendant's reasoning that the selected was clearly better qualified did not allow Defendant to meet its burden of articulating a race neutral reason for its employment decision when it did not explain how the selected candidate was clearly better qualified. *See Calvin v. Mississippi Dep't of Rehab. Servs.,* No. 3:15-CV-827-HTW-LRA, 2017 WL 1808068 (S.D. Miss. May 4, 2017). Additionally, it is worth noting that the issue in this case concerned the same position, though operating under a different name at the time, and all concerned Title VII claims as that of *Calvin. Id.*; *See also* Ex. E, Affidavit of Plaintiff. Therefore, Defendant's Motion should be denied.

### **3.** **Defendant MDRS' legitimate, non-discriminatory reason is not bona-fide and could allow a reasonable jury to infer that MDRS' reasoning is pretextual.**

Assuming that Defendant's reasoning is sufficiently clear, it is evident that MDRS' reasons for not selecting Plaintiff for the position are not bona-fide. In its EEOC position statement, Defendant contends that Mr. Howard chose Mr. Fairley to serve in this role because Fairley "had vast management experience,… exhibited characteristics tending to show that he was an effective leader and that he possessed excellent interpersonal skills,… possessed managerial experience gained through the facility side of the Agency,… and had gained valuable managerial insight and experience in the client services side of the agency when he was in the Regional Manager role managing the Agency's client services districts in the southern portion of the state." [Doc. 38-8 at p. 5]. However, in its Motion for Summary Judgment, Defendant contends that Howard

selected Mr. Fairley for the position because Fairley "was a facility manager for a number of years and then he got the regional manager position," "was very good in leadership," and could "lead in an effective manner." [Doc. 39 at p. 4 (quoting Doc. 38-6 at p. 9)].

The Fifth Circuit has held that a genuine issue of material fact is created when the employer proffers inconsistent reasons for taking their adverse employment action to the EEOC and federal court. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 415, 100 FEP 537 (5th Cir. 2007). Here, Defendant has offered inconsistent reasons in its EEOC position statement and in its Motion for Summary Judgment as to why they selected Fairley for the position. As such, the issue posits a genuine issue of material fact that should be decided by a jury.

 Assuming, nonetheless, that Defendant's reasons are proffered with 'sufficient clarity' and that such reason was that Fairley was better qualified, it is clear that Defendant's contentions are simply unfounded. The Fifth Circuit has held that a candidate hired who has failed to meet the minimum requirements is sufficient to create a fact issue as to whether Defendant's nondiscriminatory reasons for its employment decisions are pretextual. *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 314 (5th Cir. 2008).

Turning to the minimum qualifications for the position, it is clear that the candidate must have either "a Master's Degree from an accredited four-year college or university; **and** seven years in the special experience, six years of which must have included line or functional administrative or advanced technical supervision" or " a bachelor's degree from an accredited four-year college or university; **and** eight years in the special

experience, six years of which must have included line or functional administrative or advanced technical supervision." [*See* Ex. A, Deputy Administrator Position Description, at p. 2**]**. Furthermore, such special experience denoted in the minimum qualifications for the position entails that "employment must have been in an administrative, professional capacity in an area of work related to the functional responsibility of the agency in which the position exists… Work experience must have included supervising and coordinating a variety of functions." *Id.*

It is certainly notable, however, that Defendant's selected candidate does not meet the educational minimum qualifications needed to be considered for the position.  As such, there is a sufficient fact issue as to whether Defendant's legitimate reason is actually legitimate and non-discriminatory. This is because Fairley has only received an associate's degree, which is neither a bachelor's degree or an associate degree. [*See* Ex. B, Fairley Resume]. Plaintiff, however, not only has the work experience needed to be qualified, but she also has received a Bachelor's of Science in Education, and also a Master of Science in Counselor Education. [*See* Ex. C, Plaintiff's Resume]. Thus, Plaintiff is not only a candidate that meets the minimum qualifications, unlike Fairley, but also her qualifications compared to Fairley could allow a reasonable factfinder to conclude that that no reasonable employer would have made the same decision to hire Fairley for the job.

Additionally, when comparing the resumes of Fairley and Plaintiff, it is clear that Plaintiff did not lack the leadership and management experience that apparently made Fairley better qualified than Plaintiff, according to Defendant. Plaintiff has previously served as a team lead rehabilitation specialist with MDRS since 2015, and also worked

as a senior vocational rehabilitation counselor for eleven years. *Id.* Notably, both positions provided opportunities in which Plaintiff learned unparalleled leadership skills and shows that she could most definitely lead in an effective manner. *Id.* Therefore, because it is clear that Plaintiff met the minimum qualifications for the position whereas Fairley did not, a reasonable jury could therefore conclude that Plaintiff was clearly better qualified than Defendant's selected candidate, and that Defendant's reasons for not selecting Plaintiff were, in fact, pretextual.

Lastly, evidence shows that Howard falsely claimed in his deposition that the personnel board approved that the selected candidate, Fairley, met the minimum qualifications for the position. [Doc. 38-6 at p. 13-18]. However, despite these contentions, evidence proffered by Defendant in the affidavit from the State personnel board shows that such is not true because appointment was not needed. [Doc. 38-3]. Notably, it is interesting that to evade such lies, Defendant instead tries to shift the blame on Hart and claim that they could not adhere to the law because they did not receive her recommendation. Such reasoning is problematic, as the law provides that Defendant must have the recommendation before they make the appointment. In other words, if such a recommendation is not made, Defendant and Howard are not afforded the right to just go out and appoint someone without making such recommendation. Defendant furthermore should have taken the necessary steps to ensure that someone, whether it is Hart or someone who they could hire to replace Hart, could make a recommendation in order to properly adhere to the law. Such is not the case here, as Defendant clearly articulates in its motion that it cannot be held liable because Hart did not make the recommendation – as if Defendant could evade such legal obligation

based on such reasoning. Additionally, it is notable that Defendant never did make a request to Hart to make such a recommendation. [Doc. 38-10 at p 13]. And lastly, such an issue is one that Defendant has lied about in the past. *See Ex. F, Defendant's EEOC Position Statement of Sandra Sanders,* at p. 7-8.  Ultimately, because Defendant could have taken steps to ensure that it complied with the law, because it is clear that Defendants reasons for selecting Fairley over Plaintiff are not bona-fide, and because Defendant has lied about such issues in previous matters, a reasonable jury could conclude that such reasons proffered by Defendant are pretextual. As such, Defendants' Motion should be denied.

### b.  Plaintiff's Title VII retaliation claim

To establish a *prima facie* case of retaliation, a Plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a casual connection between the two. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022). In its Motion for Summary Judgment, Defendant contends that the temporal proximity is too remote in time to support Plaintiff's retaliation claim. [Doc. 39 at p. 12]. As such, it is undisputed that Plaintiff has met the first two elements of her retaliation claim. *Id.*

Defendant contends, nonetheless, that Plaintiff's claim fails at the last element because the relevant time period from which Defendant became aware of Plaintiff's protected activity – September 2019—is too remote in time to establish causation because Fairley was selected for the position in 2022. [Doc. 39 at p. 13]. Here, Plaintiff contends that she engaged in a protected activity under Title VII by filing an EEOC Charge, and thereafter Plaintiff contends that she was denied an opportunity to apply for

a promotional position, which notably is the exact action Plaintiff complained about in her initial EEOC Charge. [Doc. 38-1 at p. 19]. Moreover, it is clear that such denial was Defendant's first opportunity to discriminate and retaliate against Plaintiff after she filed her initial EEOC Charge because the vacant position Plaintiff wished to apply for was a non-state service position not subject to protections from the State Personnel Board, and Plaintiff's other positions held at MDRS were all state-service positions that were subject to protections from the State Personnel Board. *See generally* Miss. Code Ann. §25-9-107.

In short, as a state-service employee, Plaintiff was subject to employment protections, which included the fact that her employer MDRS could not terminate her at-will. However, because the vacant position that Plaintiff wanted to apply for was a non-state service position, it was the first opportunity employer MDRS could have retaliated against Plaintiff because it was not subject to the protections she had as a state-service employee. In other words, because Plaintiff had provided Defendants actual notice of her express interest in the position via her EEOC Charge, the subsequent failure to provide Plaintiff notice of the vacant position in 2022 was the first-time employer MDRS could make any employment decision against Plaintiff at-will, meaning that the position is not subject to protections from the Personnel Board. Therefore, because such instance is the first opportunity Defendants could retaliate against Plaintiff without such protections from the Personnel Board since the vacant position was a Non-State Service position not subject to protections from the Personnel Board, such is sufficient to allow a reasonable factfinder to conclude that Plaintiff has met the causation requirement and show that employer had retaliatory motives.

Furthermore, the Sixth Circuit has held that the first opportunity, even if it exceeds the normal four-month timeline, is sufficient to support a finding of temporal proximity. In *Sharp v. Aker Plant Servs. Grp., Inc.*, 600 F.App'x 337, 342 (6th Cir. 2015), Acker terminated Sharp before he filed his age discrimination lawsuit, and therefore could not retaliate against him in any manner until he returned seeking temporary employment a year and a half later. Here, the Sixth Circuit held that evidence showing that an employer had no opportunity to retaliate sooner supports a finding of temporal proximity. *Id.*; *see also Fischer v. United Parcel Serv., Inc.*, 390 Fed.Appx. 465, 469 (6th Cir. 2010) (finding that the plaintiff could establish causation after two-and-a-half-year interval based on the "practical reality" that he took an extensive period of medical leave during that time); *Dixon v. Gonzalez*, 481 F.3d 324, 335 (6th Cir. 2007) (holding similarly in the context of a reinstatement case); *see also Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch. Dist.*, 974 F.3d 652, 665 (6th Cir. 2020) ("[A] court may still draw an inference of causation where the defendant took advantage of its first meaningful opportunity to retaliate against the plaintiff.").

Moreover, the Sixth Circuit's opinion in *George v. Youngstown State Univ.*, 966 F.3d 446 (6th Cir. 2020) found that a significant delay between protected activity and adverse action is not fatal to a retaliation claim. The Court denoted that the given Defendant's economic incentive in retaining Plaintiff until the end of the academic year, coupled with the fact that there was a close temporal proximity to the conclusion of his settlement coverage could suggest that his firing was retaliatory. *Id.* at 460. "When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation."

*Dixon*, 481 F.3d at 335 (quoting *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005)). This is particularly true when the alleged retaliation occurs at the first chance the employer has to take the adverse action in question. *Id*. at 334–35; *see also Id.* at 335 ("This is especially true in the context of a reinstatement case, in which the time lapse between the protected activity and the denial of reinstatement is likely to be lengthier than in a typical employment-discrimination case.").

Such a notion is not exclusive to the Sixth Circuit. In fact, both the Fourth Circuit and Seventh Circuit have also considered the causation element of retaliation in the context of the first opportunity. In *Templeton v. First Tenn. Bank, N.A.*, the Fourth Circuit held that the Defendant's refusal to rehire a woman who had resigned two years earlier because of management's failure to address her complaints about sex harassment raised an issue of retaliation despite the remoteness in time where the refusal to rehire was the company's first opportunity to retaliate against her. *See Templeton v. First Tenn. Bank, N.A.*, 424 F. App'x 249 (4th Cir. 2011).

Furthermore, in *Malin v. Hospira, Inc.,* the Seventh Circuit reversed its decision to grant summary judgment for the defendant, finding that a long gap was not fatal to a retaliation claim when evidence indicated defendant "had a long memory," repeatedly retaliated against plaintiff by denying her promotions, and then effectively demoted her when first given the opportunity. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 559-60 (7th Cir. 2014). Additionally, the Seventh Circuit in *McGuire v. City of Springfield,* found the causation requirement to be met in a retaliation claim when the retaliation came eleven (11) years after the plaintiff complained of sex discrimination and defendant retaliated at the first opportunity available to do so. *McGuire v. City of Springfield,* 280 F.3d 794, 796

(7th Cir. 2002). Similarly, here, there is a close temporal proximity between which the non-state-service position became vacant in December 2021, and when the new candidate was selected in February 2022. During this three-month span, Defendant knew that Plaintiff wanted to be considered for the position because she had previously filed an EEOC Charge about not being selected for the position in 2019. Ultimately, because such was the first time Defendant could retaliate against Plaintiff at its first opportunity, it could be concluded by a reasonable factfinder that Plaintiff has established a *prima facie* case for retaliation.

Moreover, it is also important to note that Howard has a repeated pattern of selecting candidates without recommendations for this position, amongst other positions, who have not engaged in protected activities, i.e., filing an EEOC Charge. It is also notable that in each of these instances, those that are inevitably selected for these positions at MDRS do not meet the minimum qualifications, whereas those who do meet the minimum qualifications are not given the positions because they engaged in a protected activity. Stated differently, the difference between the selected candidates and those who are not selected but are qualified for the position is that they engaged in a protected activity. *See Sanders v. Mississippi Dep't of Rehab. Servs*., No. 3:20-CV-830-CWR-LGI, 2022 WL 452402, at *1 (S.D. Miss. Feb. 14, 2022); *See See Calvin v. Mississippi Dep't of Rehab. Servs.,* No. 3:15-CV-827-HTW-LRA, 2017 WL 1808068 (S.D. Miss. May 4, 2017); [Doc. 38-4]; *See Darden v. Mississippi Dep't of Rehab. Servs.*, No. 3:24-cv-00144-CWR-ASH (currently pending). To a reasonable jury, such could be an inference of pretext as it is clear that Defendants reasoning that these candidates are clearly more qualified are not bona-fide.

Additionally, it could also be reasoned that because this issue concerns the same position, and Defendants intentionally changed the status of the position after the *Calvin* filed his EEOC Charge against Defendant, to be one with non-state civil service protections, it could be concluded by a reasonable fact-finder that Howard afforded himself more leeway to intentionally retaliate against Plaintiff if such an issue were to come to a head in the future. Furthermore, because such intentional status change afforded Howard more leeway, it could be concluded that such was done in bad faith to afford Howard the ability to retaliate against Plaintiff in the future. As such, a reasonable jury could conclude that such decision was pretextual.

### 1. Defendant's legitimate rationale for the underlying employment action

Defendant articulates in their motion that they have a burden of producing a legitimate, non-retaliatory reason for its employment decision to select Fairley for the vacant position. However, in its motion, Defendant does not articulate with clarity why they made such decision under its retaliation section of its motion. As such, it could be argued that it has not proffered such reasoning with 'sufficient clarity' as required in *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).

Nonetheless, assuming that Defendants' reasoning is the same as its reasoning above in that Fairley was better qualified, for the same reasons above, it is clear that Plaintiff was more qualified because she actually met the minimum qualifications for the job, whereas Fairley did not. Because not meeting the minimum job requirements is sufficient to show that Defendant's reasoning is pretextual, a reasonable jury could also

agree that Fairley's lackluster educational achievements when compared to Plaintiff's shows that Defendant's decision was pretextual.

Furthermore, it is also worth mentioning that Defendant's ignorance of the law is not actual ignorance, as such behavior has been proven to be a pattern and practice displayed by Defendants on numerous occasions. *See generally, Sanders*, No. 3:20-CV-830-CWR-LGI, 2022 WL 452402 (S.D. Miss. Feb. 14, 2022); *See also Calvin v. Mississippi Dep't of Rehab. Servs.,* No. 3:15-CV-827-HTW-LRA, 2017 WL 1808068 (S.D. Miss. May 4, 2017). Furthermore, such evidence that Defendants have been placed on actual notice via prior litigation, coupled with the fact that Plaintiff was more qualified than Fairley, the selected candidate, could also allow a reasonable jury to infer that Defendant's reasoning that Fairley was more qualified is not a bona-fine reason. Lastly, because it could be seen that Defendants intentional status change allowed Howard to have more leeway in the ability to retaliate against Plaintiff in the future, it could also therefore be concluded that Defendant's retaliatory motives were, in fact, pretextual.

Therefore, Defendant's motion should be denied.

### c. <u>Plaintiff's tortious interference claim</u>

To prove tortious interference, a plaintiff must prove that a defendant committed (1) intentional and willful acts; (2) calculated to cause damages to the Plaintiff in [her] lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss, without right to justifiable cause on the part of the Defendant, which acts constitute malice; and (4) actual loss occurred. *See Reeves v. Midcontinent Exp. Pipeline, LLC,* 119 So.3d 1097, 1102 (¶ 13) (Miss.Ct.App.2013). "In this context,

'malicious' is defined as the intentional doing of a harmful act without legal or sound justification or excuse, in other words, the willful violation of a known right." *Collins v. Collins*, 625 So.2d 786, 790 (Miss.1993). "An action for interference with the contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party." *Nichols v. Tri–State Brick & Tile Co.*, 608 So.2d 324, 328 (Miss.1992).

Furthermore, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with [her] principal's contractual relationship with a third person." *Shaw v. Burchfield*, 481 So.2d 247, 254-55 (Miss. 1985) (defendant insurance agents had responsibilities related to the plaintiff's terminated at-will employment contract); *see also Vestal v. Oden*, 500 So.2d 954, 955 (Miss.1986) ("[O]ne occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." (citing Restatement (Second) of Torts § 770 comment b, illustration 3 (1979))).

The Mississippi Court of Appeals in *Morrison v. Mississippi Enterprise for Technology*, 798 So.2d 567, 575 (¶ 28) (Miss.Ct.App.2001), held that this " 'privilege' is merely a specific example of having 'right or justifiable cause' to interfere with the [contractual] relationship." "A person occupying a position of responsibility on behalf of another is 'privileged,' which is another word for having a right." *Id*. at (¶ 29). To satisfy this element of tortious interference when an individual is acting within the scope of responsibility on behalf of another, the plaintiff must present evidence of bad faith. *Jones v. Mullen*, 100 So.3d 490, 498 (¶ 36) (Miss.Ct.App.2012) (affirming the grant of

summary judgment to the defendants where the plaintiffs did not sufficiently allege a genuine dispute as to the element of bad faith). "Bad faith" in this context "raises an issue of motive." *Morrison*, 798 So.2d at 575 (¶ 26). And "the conclusion [of bad faith] must be that the actor was malicious or recklessly disregarding the rights of the person injured." *Id*.

 In short, if the actor was not within the scope of his authority, then the privilege, this specific example of a "right," does not apply. *Springer v. Ausbern Const. Co.,* 231 So. 3d 1065, 1069 (Miss. Ct. App. 2016).  However, if the actor is within the scope of the actor's responsibility, then for the "without right" portion of the third prong to be met, the actor must be found to have acted in bad faith, and motive is relevant to a determination of bad faith. *Id.*

Plaintiff has established the "bad faith exception" by showing that Defendant Howard acted with malice, in other words, that he caused Plaintiff to not be considered for the vacancy "*without right or good cause.*" *Shaw*, 481 So.2d at 254–55 (citing *Morrison v. Miss. Enter. for Tech.*, 798 So.2d 567, 575 (Miss. App. 2001) (emphasis added). "Malice in law is not necessarily personal hate or ill will, but the intent, without justification or excuse, to commit a wrongful act." *Harmon v. Regions Bank*, 961 So.2d 693, 699 (Miss. 2007) (citation omitted).

Defendant contends that Plaintiff cannot show that Howard acted in bad faith because Howard was ignorant of the law. [Doc. 39 at p. 16]. First, it has been strikingly clear that Howard is not ignorant. Such is because Ms. Hart's deposition showed that Howard was aware of the law, and signed off on numerous federal grants that he was complying with the law. [Doc. 38-10 at p. 32]. Furthermore, Plaintiff has also shown that

Howard has lied about several other previously mentioned facts central to this case, including the fact that he received approval from the personnel board when he actually did not. Additionally, it is clear that Defendants also changed the status of the position to be one that does not afford state service protections, as they had done so after this Court's decision in *Calvin. See Calvin v. Mississippi Dep't of Rehab. Servs.,* No. 3:15-CV-827-HTW-LRA, 2017 WL 1808068 (S.D. Miss. May 4, 2017); *See also* [Ex. E]. Therefore, because a reasonable factfinder could conclude that the change of the position afforded Defendants more leeway to do what they want without the roadblocks of state service protections, a reasonable fact finder could conclude that such was done in bad faith.

Moreover, ignorance of the law is simply not a defense and certainly cannot afford Howard a legitimate excuse to evade the law. Certainly, and most importantly, it is important to note that Howard works at an administrative agency and is afforded the luxury of having in house counsel, and the Attorney General's office, to use at his convenience. Defendant has established that Howard did not knowledge that he had to comply with any statutory provisions in selecting a candidate. Such is problematic, especially since such behavior is a pattern and practice established by Defendant over the years in previous litigated matters concerning the same issue – all while Howard was employed by MDRS in the executive director position. *See generally, Sanders*, No. 3:20-CV-830-CWR-LGI, 2022 WL 452402 (S.D. Miss. Feb. 14, 2022); *See also Calvin v. Mississippi Dep't of Rehab. Servs.,* No. 3:15-CV-827-HTW-LRA, 2017 WL 1808068 (S.D. Miss. May 4, 2017).

Moreover, such self-proclaimed ignorance, in light of litigation that has ensued over such issue for nearly over a decade while Howard was Executive Director, coupled with Howard's numerous lies concerning this matter, cannot allow Defendants to avoid liability for tortious interference. Here, it is clear that such 'ignorance' is proclaimed in bad faith, especially when the Executive Director could ask the Attorney General's Office to deduce whether such employment decisions are completed fairly and in accordance of the law. Furthermore, it could also be reasoned that Howard has the duty as the Executive Director to have knowledge of the laws that are applicable to his job position, which includes the statute in question in this matter, amongst others. Ultimately, because Howard could have easily asked in house counsel about whether his selection was in accordance with his job duties and obligations, a reasonable jury could conclude that Howard's ignorance is simply asserted by Defendant in bad faith. Additionally, a reasonable jury could conclude that Howard had constructive and actual notice of his obligations pursuant to Mississippi law from prior litigation and factual inconsistencies presented. Moreover, because Howard's ignorance further precluded Plaintiff from being afforded an opportunity to apply for the position and its benefits and higher pay, a reasonable jury could conclude that Howard's actions, taken into culmination, were done in bad faith. Therefore, Defendant's Motion for Summary Judgment should be denied.

Furthermore, it is clear that Mississippi Law, specifically Miss. Code. Ann. §37-33-13 (c) - (s) and Miss. Code Ann. §25-9-107-123, requires Defendant Howard to ensure that such position vacancy is posted publicly.  However, Defendant laughably claims that such an omission by Defendant Howard to make public the job vacancy on

more than one occasion was not for an unlawful purpose because it was done out of his own ignorance, and because Ms. Hart did not approve Howard's non-recommendation. [Doc. 39 at p. 16]. Such is not the case as it is clear that the omission to do so does, in fact, allow a reasonable factfinder to conclude that it was certainly for an unlawful purpose since posting the position is required by law in order for a recommendation to be made. As such, this certainly poses an issue of material fact that could allow a reasonable jury to conclude that Howard acted in bad faith.

The Mississippi Supreme Court has denoted that evidence showing that a Defendant's acts were sufficient to meet a showing of a tortious interference when it is established that Defendant's acts were intentional and willful and were "done with the unlawful purpose of causing damage and loss, without right or justifiable cause." *MBF Corp. v. Century Business Communications, Inc., A Subsidiary of Century Tel. Enterprises, Inc.,* 663 So. 2d 595, 599 (Miss. 1995). Here, Plaintiff has shown that Defendant Howard's acts were both intentional and willful since he went beyond the scope of his employment and did not post the job as instructed by his supervisor at MDRS so she could recommend a person for the position. In fact, Hart admits that she was never asked to provide a recommendation for this position, amongst other previous positions as required by the statute. *See* Ex. D, Complete Deposition of Lavonda Hart, at p. 8; *See also* [Doc. 38-10 at p. 19]. Certainly, because this is a repeated offense, a reasonable jury could conclude that the same happened in this case in that Hart was also not asked to provide a recommendation. Additionally, there is proof that the intentional acts of Howard were calculated to cause damage to Defendant MDRS since his failure to do what was instructed was a violation of state law and MDRS hiring

procedures. Furthermore, since it is clear that Howard intentionally and willfully did not post the job vacancy to the public so that his supervisor could make a recommendation for the position, Defendants Motion dismissing Plaintiff's tortious interference claim should be denied.

## IV. <u>CONCLUSION</u>

Ultimately, for the reasons stated above, it is clear that Plaintiff has shown that there are genuine issues of material fact concerning her Title VII discrimination claims, her retaliation claim, and her tortious interference claim. As set forth above, the Plaintiff has presented circumstantial evidence of pretext to satisfy her burden to defeat the Defendant's Summary Judgment Motion. The Court should thus allow Plaintiff's claims to proceed to trial. "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.,* 684 F.3d 533, 538 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)). In the current case, even if the standards of Rule 56 are met, the better course would be to proceed to a full trial where a jury can personally view the testimony of each witness to determine truthfulness. Moreover, there is zero likelihood of committing reversible error by denying the motion for summary judgment as the Supreme Court has made it clear a denial of a motion for summary judgment cannot be reviewed by an appellate court once there is a trial on the merits. *Ortiz v. Jordan*, 131 S. Ct. 884 (2011).

THIS, the 16th day of September, 2024.

Respectfully submitted,

By: /s Nick Norris
Louis H. Watson, Jr. (MB# 9053)
Nick Norris (MB# 101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive #365

Flowood, MS 39232

(601) 968-0000
Fax: (601) 968-0010
nick@watsonnorris.com

## CERTIFICATE OF SERVICE

I, Nick Norris, attorney for Plaintiff do hereby certify that I have this day filed the

foreground with the Clerk of the Court using the ECF system which sent notification of

such filing or mailed, via United States Mail, postage prepaid, on all counsel of record.

SO CERTIFIED, this the 16th day of September, 2024.

/s Nick Norris

Nick Norris