IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENISHA BLACK                                                                                    PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:23-CV-00426-DPJ-ASH

MISSISSIPPI DEPARTMENT OF
REHABILITATION SERVICES; AND
CHRIS M. HOWARD, INDIVIDUALLY                                                     DEFENDANTS

DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56, Defendants Mississippi Department of Rehabilitation Services ("MDRS") and Chris M. Howard, Individually ("Howard") (collectively "Defendants") submit the following Reply Brief in Support of their Motion for Summary Judgment [Doc. 38], and state as follows:

DEFENDANTS' REPLY

Plaintiff Kenisha Black ("Plaintiff") sued her employer MDRS and its former Executive Director Howard alleging claims under Title VII for race and gender discrimination and retaliation against MDRS and tortious interference against Howard. As set forth below, Defendants are entitled to summary judgment on all claims.

Plaintiff's discrimination and retaliation claims fail. Plaintiff has not established that she was the clearly better candidate than Charles Fairley ("Fairley") for the Director of Client Services ("DCS") position—nor has she shown that Fairley was *not* qualified for the job. Plaintiff has not shown that MDRS's appointment procedure discriminated against her based on her race, gender, or her newly espoused

1

"race plus" claim. Howard's appointment of Fairley to DCS was well within his statutory authority as Executive Director—and neither Plaintiff's race nor gender played any role. Further, Plaintiff's 2019 EEOC charge is too remote in time to establish causation on her retaliation claim—nor has she established that she would have been selected "but for" her having filed a charge. Rather, Plaintiff's "first opportunity" for retaliation theory falls flat. Finally, while Plaintiff piles unsupported inference upon unsupported inference, she has not put forth sufficient evidence to support her tortious interference claim against Howard.

I. <u>MDRS is entitled to summary judgment on Plaintiff's Title VII claims.</u>

　　A. <u>"Race plus" and gender claims</u>

Plaintiff cannot establish a *prima facie* race case for race discrimination because it is undisputed that she and Fairley are members of the same protected class.[1] Recognizing the fatal flaw of her race discrimination claim, Plaintiff, <u>for the first time</u> in her Response, raises a "race plus" claim claiming the combination of race and gender constitutes a separate group protected under Title VII. [Doc. 12, pp. 12-15]. In other words, Plaintiff now contends that she was discriminated not solely because of her race or gender, but on a combination of the two (*i.e.*, as a black female). Without citation to any evidence, Plaintiff baldly claims Howard's decision to appoint Fairley "was motivated by the combination of race and gender because black women

---

[1] To the extent that Plaintiff has not abandoned a pure race discrimination claim, it must be dismissed because she cannot establish a *prima facie* case of race discrimination since she and Fairley are in the same protected class.

were treated less favorably compared to black men when being considered for the Director of Client Services position at MDRS." *Id.* at 12-13.

As an initial matter, Plaintiff failed to plead "race plus" in her Complaint and it is not properly before the Court. [Doc. 1]. "Claims and supporting factual allegations must be raised in the complaint and may not be presented only in a response to a motion to dismiss or in a motion for summary judgment." *Ewing v. Richie*, No. 1:16-cv-90-HSO-JCG, 2017 WL 724343, *2 (S.D. Miss. Jan. 9, 2017) (additional citations omitted); *Carlisle v. Elite Trucking Services, LLC*, No. 1:16-cv-257-HSO-JCG, 2016 WL 11608938, *2 (S.D. Miss. Sept. 30, 2016) (same). In *Williams v. BFI Waste Services, LLC*, No. 3:16cv75-DPJ-FKB, 2017 WL 1498230, *2 (S.D. Miss. April 24, 2017), the court noted that the Fifth Circuit has often held, in both reported and unreported opinions, that "[a] claim which is not raised in the complaint but rather, is raised in response to a motion for summary judgment is not properly before the court" and that this rule has been applied to disallow not only new legal claims, but also new factual bases for previously pleaded legal theories.[2] Plaintiff cannot amend her Complaint in her Response, following both the deadline to do so and the close of discovery, thus her "race plus" claim is not properly before this Court and should be ignored. *Ewing*, 2017 WL 724343 at * 2; *Carlisle*, 2016 WL 11608938 at *2.

---

[2] The *Williams* court also recognized alternate Fifth Circuit law holding that courts should construe new theories in a summary judgment response as a motion to amend. *Williams*, 2017 WL 1498230 at *3.

3

Even if Plaintiff's "race plus" claim was properly before the Court, it—along with her gender discrimination claim—fails for other reasons. "Claims of intersectional discrimination [also called race plus] are like those based on race but with the added component of sex." *Thomas v. Cook Children's Health Care System*, No. 4:20-cv-01272-O, 2021 WL 4796679, *7 (N.D. Tex. July 28, 2021) (citations omitted). "To state a claim for intersectional discrimination, a plaintiff must state a claim for both race and sex discrimination." *Id.* Plaintiff has failed to do so.

Plaintiff must first establish by a preponderance of the evidence a prima facie case of discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The analysis requires Plaintiff to show that (1) she is a member of a protected class; (2) she applied for and was qualified for the position she sought; (3) she was not promoted; and (4) the position was filled by someone not in the protected class. *McFall v. Gonzales*, 143 Fed App'x 604, 607 (5th Cir. 2006) (citations omitted). Second, and only if the plaintiff establishes a prima facie case, the defendant then must offer a legitimate nondiscriminatory reason for promoting the employee outside of the protected class. *Mengistu v. Miss. Valley State Univ.*, 716 F. App'x 331, 334 (5th Cir. 2018). The defendant's burden is one of production rather than persuasion. *Id.* Third, once the defendant articulates its reason, the plaintiff must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Outley v. Luke & Assocs.*, 840 F.3d 212, 216 (5th Cir. 2016).

At the prima facie case stage of a failure to promote claim, the plaintiff must prove that she applied for the position at issue, or that one of three exceptions applies. *Shackelford v. Deloitte & Touche LLP*, 190 F.3d 398, 406 (5th Cir. 1999); *see also*, *Everett v. Mississippi,* 106 F. App'x 264, 267 (5th Cir. 2004); *Johnson v. Louisiana*, 351 F.3d 616 (5th Cir. 2003).  First, plaintiff can show that "an application would have been a futile gesture" given "a known and consistently enforced policy of discrimination." *Shackelford*, 190 F.3d at 406. Second, plaintiff can substitute evidence of an application by showing an employer's "affirmative concealment" of the position. *Everett*, 106 F. App'x at 267. Lastly, a plaintiff can point to evidence that the employer had a duty to consider her for the position, such as a legal obligation or that she communicated an interest in the position. *Johnson*, 351 F.3d at 622.  None of those exceptions apply here.

It is undisputed that the DCS position was appointed under state law and there was no application process.³  Plaintiff argues that MDRS should have known she was interested in the position because she had previously sued MDRS over not getting the position in 2019.  [Doc. 42, p. 15].  Yet, Plaintiff failed to produce any evidence <u>whatsoever</u> that she communicated any interest in the DCS position when it was vacated again in 2021.  Rather, without any supporting evidence, Plaintiff merely contends that Howard lied about his knowledge of Plaintiff's interest in the position.  *Id.*  Aside from her subjective belief, Plaintiff has no evidence whatsoever

---

³ Plaintiff also, with no valid citations whatsoever, claim that Defendant MDRS changed the Director of Client Services position from a state service position to a non-state service position, so that it could discriminate and/or retaliate against employees.  This has no factual basis whatsoever.

5

to refute Howard's testimony that he was not aware that anyone, including Plaintiff was interested in the DCS position in 2021. [Doc. 38-6, p. 11].

"Federal law is clear that '[a] non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions.'" *Johnson v. Quality Restaurant Concepts, LLC*, No. 4:18-cv-65-DMB-JMV, 2019 WL 3877682, *2 (N.D. Miss. Aug. 16, 2019) (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015). Again, Plaintiff failed to present any evidence whatsoever that Howard was aware of her interest in the DCS position in 2021. "While this Court must view the evidence in the light most favorable to the non-moving party and allow all reasonable inferences therefrom, it should not pile inference upon inference such that it crosses into speculation." *Cardenas v. Maslon*, 93 F.Supp.3d 557, 569 (N.D. Miss. 2015) (quoting *Rast v. Ryan's Rest. Grp., Inc.*, No. 1:10-cv-138, 2011 WL 4455247, *9 (N.D. Miss. Sept. 23, 2011)).

Plaintiff's unsubstantiated assertion regarding Howard's purported knowledge of her interest in the DCS position is pure speculation and is <u>not</u> competent summary judgment evidence. Rather, as the district court aptly recognized in Black's prior litigation, there was no "obligation for MDRS to seek applications for an appointed, policymaking, non-competitive, non-state service job." [Doc. 38-4, p. 8]. The DCS position at issue is a non-state service job, which was not required to advertised, and the Executive Director (Howard) had sole discretion in appointment under Miss. Code Ann. § 25-9-107(c)(xvi). Simply put, the DCS position vacancy had not been—nor was it required to be—posted for advertisement under the State Personnel Board policies

6

nor state law. [Doc. 38-3]. The DCS position was not a vacancy for which Plaintiff—or any other person of any race or gender—could have applied.

Plaintiff's "race plus" claim was not plead in her Complaint and is not properly before the Court. Regardless, Plaintiff has not established a prima facie race, "race plus", or gender discrimination claim.

B. <u>Defendant's legitimate, non-discriminatory reason is not mere pretext.</u>

Even assuming *arguendo* that Plaintiff had established a prima facie case discrimination, MDRS has established a legitimate, non-discriminatory reason for its actions. MDRS selected Fairley, who is a <u>qualified</u> candidate with a long history working at MDRS and an extensive management background. [Doc. 38-6, pp. 9-10; 23]. Plaintiff has not established that MDRS's reason is pretextual.

"An employer meets its burden of production" in this context "by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer." *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 957 (5th Cir. 1993). The employer must articulate "a lawful reason, regardless of what its persuasiveness may or may not be." *Id.* at 958. The proffered reason or reasons meet that standard where the employer provides a "clear and reasonably specific basis" for its assessment, whether its reasons are subjective or not. *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007) (citations omitted); *see also Ward v. Gray Television Grp., Inc.*, 787 F. App'x 850, 851 (5th Cir. 2019) (employer's subjective reason for its employment action satisfied its burden). Contrary to Plaintiff's absolutely false assertion relying on a resume from over a decade ago rather than on Fairley's job

7

application for the current position, Fairley clearly met the educational requirements for the DCS position, and MDRS has been consistent in its reasons for appointing him.

Since MDRS articulated a legitimate, non-discriminatory reason, under *McDonnell Douglas,* the burden shifts to Plaintiff to "demonstrate by competent evidence that the presumptively valid reasons . . . were in fact a coverup for a [ ] discriminatory decision." *McDonnell Douglas*, 411 U.S. at 805. When an employer offered a job because of "superior qualifications," which is essentially the case here, a plaintiff can prove the reason false *only* by showing that she was "clearly better qualified" for the position. *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (citation omitted). It is not the Defendants' burden to show that the successful applicant is "clearly better qualified"; rather, it is the Plaintiff's burden to prove that <u>she</u> was clearly better qualified. "To carry this heavy burden, a plaintiff must show that 'the qualifications are so widely disparate that no reasonable employer would have made the same decision.'" *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459 (5th Cir. 2019) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010)).

Relying on an outdated 2011 resume, Plaintiff falsely contends that MDRS's proffered reason is mere pretext for discrimination because Fairley did not meet the minimum education requirements for the DCS position.[4] [Doc. 42, pp. 18-20; Doc. 41-

---

[4] Likewise, Plaintiff's argument that a comparison of her resume with Fairley's ***outdated*** 2011 resume fails. *See* [Doc. 42, pp. 19-20]. Again, Plaintiff is relying on an outdated resume that fails to reflect Fairley's actual education and experience when he was appointed as DCS. *Compare* [Doc. 41-2 with Ex. 1 attached hereto].

8

2]. Plaintiff devotes several pages of her Response to argue that Fairley did not possess either a Master's degree or Bachelor's degree needed for the minimal education requirements for the position. [Doc. 42, pp. 18-20; Doc. 41-1]. Plaintiff's contention that Fairley was not qualified is **unequivocally false**.[5]

As reflected in Fairley's February 1, 2022 verified application for an MDRS Deputy Administrator—Tier II position, he earned a Bachelor of Science Degree from Alcorn State University in 2018. *Ex. 1*, Fairley's February 1, 2022 verified job application; [Doc. 38-5; see Doc. 38-8, p. 35]. Plaintiff has not—and cannot—show that Fairley did not meet the educational or other requirements for the DCS position.

Howard selected Fairley for the appointment based on his experience and leadership skills. [Doc. 38-6, pp. 9-10; 23]. Specifically, "Charles [Fairley] was a facility manager for Ability Works of Laurel for a number of years and then he got the regional manager position and Charles was very good in leadership or is very good in leadership. He had a military background, he had a number of years in leadership, and as the director of client services with it being one level below the director of vocational rehab, you know, it requires someone, in my opinion, that has very strong leadership skills and he had, in my opinion, has those and was able to, what I feel, lead in an effective manner." [Doc. 38-6, pp. 9-10; 23]. Further, Howard had "heard things while he was regional manager … that he was very good at going out to the field and meeting with staff as they had issues … that he supported them and, again,

---

[5] Plaintiff's contention that Howard "falsely claimed" at his deposition that Fairley met the minimum requirements is unavailing because Fairly *does* hold a Bachelor's Degree, which he earned in 2018. [Doc. 42, p. 20].

9

that's what the director of client services, in my opinion, needs is someone with those leadership skills." *Id.* at 10; *see also* [Doc. 38-8, MDRS Position Statement, pp. 3-4, outlining Fairley's qualifications for the position].

Plaintiff's next attempt to show pretext through alleged discrepancies between MDRS's EEOC position statement and its summary judgment arguments also fails. [Doc. 42, pp. 17-18]. As an initial matter, Plaintiff cherry picks mere snippets of Howard's testimony, which is fully set forth in the preceding paragraph and at pages 4 and 5 of Defendants' Memorandum [Doc. 38-6, pp. 9-10; Doc. 39, p. 4-5]. Plaintiff's selected snippets do not reflect Howard's full testimony concerning his decision to appoint Fairley. Regardless, a comparison of Section V of MDRS's EEOC position statement [Doc. 38-8, p. 5] with Howard's deposition testimony cited in Defendants' Memorandum [Doc. 39, p. 4; Doc. 38-6, p. 9-10] establishes consistent reasons for appointing Fairley. *Compare* [Doc. 38-8, p. 5 and Doc. 39, p. 4; Doc. 38-6, pp. 9-10]. While the precise words used may not be identical, MDRS references Fairley's managerial experience in the private sector, military and with MDRS, his leadership skills, and experience gained by working with the facility side of the agency called Ability Works. *Id.* Contrary to Plaintiff's argument, MDRS has not proffered inconsistent reasons for appointing Fairley, and Plaintiff has not established pretext.

Plaintiff's final attempt to establish pretext by repeated portraying Howard as a liar—<u>yet again without any supporting evidence</u>—is equally unavailing. Again, Plaintiff relies on an outdated resume from 2011 for the false premise that Fairley did not meet the minimum educational requirements for the DCS position. *Ex. 1.*

10

Further, nothing in the Declaration of Kelly Hardwick [Doc. 38-3] contradicts Howard's deposition testimony that he sent Fairley's post-appointment application and a personnel transaction form to the state personnel board [Doc. 38-6, pp. 13-18]. Rather, Hardwick testified that "as this position is excluded from state service I only acknowledge such appointments but do not have any role in assessing qualifications in accordance with MSPB Policies and Procedures." [Doc. 38-3, ¶ 5]. Hardwick did not, however, state that Howard never submitted the referenced documents to MSPB—whether he was required to do so or not. [Doc. 38-3]. Nonetheless, any dispute as to this fact is immaterial since it is undisputed that Howard did not require MSPB approval for Fairley's appointment. *Id.*; MSPB Policies and Procedures § 4.4.1; Miss. Code Ann. § 37-33-159.

Further, it is undisputed that Howard did not seek a recommendation from OVR Director, Lavonda Hart ("Hart"). Rather than shifting the blame to Hart, as Plaintiff avers, the bottom line is that Howard had ultimate authority to appoint the position without advertising the job opening. See Miss. Code Ann. § 25-9-107(c)(xvi). Plaintiff relies heavily on Miss. Code Ann. § 37-33-15(c), which provides that the OVR Director "shall, with the approval of the executive director, recommend for appointment such personnel as may be necessary for the efficient performance of the functions of this office." Plaintiff's argument, however, falls flat for two reasons: (1) Hart admittedly did not make any recommendation or attempt to make a recommendation of any specific "personnel" [Doc. 38-10, pp. 19-21]; and (2) Howard clearly had to approve any such recommendation even if one had been made. Miss.

11

Code Ann. §§ 37-33-15; 37-33-159. Moreover, the broader statute conferring powers on the Executive Director (Howard) provides that "[t]he executive director shall be responsible to the board for the proper administration of the programs of rehabilitation provided under this chapter in conformity with the policies adopted by the board and **shall be responsible for appointing directors of offices and any necessary supervisors, assistants and employees**." Miss. Code Ann. § 37-33-159 (emphasis added). This includes the appointment of Charles Fairley for DCS in February 2022.

While Plaintiff may disagree with Howard's assessment of Fairley's qualifications, she has failed to carry the heavy burden of showing that she was clearly better qualified at this pretext juncture. Plaintiff simply has not established pretext on her race, race plus or sex discrimination claims.

C. <u>Retaliation claim</u>

Plaintiff has not established a prima facie case of retaliation, which requires that she show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) (*citing Saketoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022)). Plaintiff's retaliation claim fails as to causation because her protected activity occurred almost two and a half years before Fairley was appointed DCS, thus it is too remote in time. *See e.g., Williams v. Recovery School Dist.*, 859 F.Supp.2d 824, 831–32 (E.D.La.2012) (finding that the plaintiff failed to allege facts in support of causal link necessary to support

12

retaliation claim where it appeared from complaint that "roughly sixteen months passed between when Williams filed his first EEOC charge and when RSD terminated his employment"); *Gentry v. Jackson State Univ.*, 161 F. Supp. 3d 418, 423 (S.D. Miss. 2015) (eighteen months' time span too remote to establish causation).[6]

Plaintiff unsuccessfully attempts to evade her causation problem by relying on non-binding precedent to assert a "first opportunity to retaliate" theory. [Doc. 42, pp. 22-25]. Under Plaintiff's "first opportunity to retaliate" theory, she contends that since Plaintiff was a state-service employee entitled to certain due process protections, MDRS did not have the opportunity to retaliate against her until a non-state service DCS position, without those protections, came available. [Doc. 42, pp. 22-25].

Plaintiff's "first opportunity" argument is unpersuasive for several reasons. First, Plaintiff relies on a non-binding line of cases primarily from the Sixth Circuit, yet no court in the Fifth Circuit has adopted this "first opportunity" theory. Second, the non-binding cases upon which Plaintiff relies are distinguishable from the instant case as they primarily involve reinstatement following a discharge or a termination following extended leave rather than a failure to promote an existing employee. For example, *Sharp v. Aker Plant Servs. Grp., Inc.*, 600 F.App'x 337, 342 (6th Cir. 2015)

---

[6] To the extent that Plaintiff contends that she was actively engaging in protected activity the entire span from September 2019 through June 2023, that argument fails under *Atkins v. Se. Cmty. Health Sys.*, 712 F. App'x 388, 391 (5th Cir. 2017). In *Atkins*, the Fifth Circuit rejected the plaintiff's argument that any employee who experiences an adverse employment action while an EEOC charge (or litigation) is pending can make out a prima facie showing of a causal connection, even if the employer has been aware of the charge for a significant length of time.

13

was a reinstatement case under the ADEA where the plaintiff alleged that he was not rehired in retaliation for having filed an EEOC charge, which did not involve any failure to promote allegations.[7] Third, Plaintiff's application of the "first opportunity" theory here strains logic. While Plaintiff was a state service employee entitled to certain protections, such as a due process hearing prior to termination or other discipline, that would not have prevented MDRS from allegedly retaliating against her if it desired. Rather, if MDRS were as determined to retaliate as Plaintiff portrays, it could have done so anyway, and simply faced the due process hearing. Further, since Howard was unaware that Plaintiff was interested in the DCS position in 2021, he could not possibly have taken the "first opportunity" to retaliate against her by appointing Fairley to the DCS position.[8]  [Doc. 38-6, p. 11].[9]  Plaintiff has not established a prima facie case of retaliation.

---

[7] The other "first opportunity" cases upon which Plaintiff relies are equally distinguishable. *Fischer v. United Parcel Serv., Inc.*, 390 Fed.Appx. 465, 469 (6th Cir. 2010) involved a termination following plaintiff's extensive medical leave. Further, *Dixon v. Gonzales*, 481 F.3d 324, 335 (6th Cir. 2010), *Kirilenko-Ison v. Brd. of Ed. Of Danville Indep. Sch. Dst.*, 974 F.3d 652, 665 (6th Cir. 2020), *Templeton v. First Tenn. Bank, N.A.*, 424 F.App'x 249 (4th Cir. 2011) are cases involving refusal to reinstate rather than failure to promote. Whereas, *George v. Youngstown State Univ.*, 966 F.3d 446 (6th Cir. 2020) involved the non-renewal of an employment contract where the defendant had an economic incentive not to breach the contract, which is not at issue here. Similarly, *McGuire v. City of Springfield, IL*, 280 F.3d 794 (7th Cir. 2002) involved the termination of a plaintiff at the conclusion of a Illinios Department of Human Rights' order directing the city to place plaintiff in the training program. While *Marlin v. Hospira*, 762 F.3d 552, 559-60 (7th Cir. 2014) involved a failure to promote **and** an effective demotion, the plaintiff had applied and her application was ignored, and she had been denied other promotions numerous times during the three-year period, which is not the case here.

[8] Plaintiff's argument that MDRS changed the status of the DCS position from state service to non-state service out of some nefarious, retaliatory plot following *Calvin v. Mississippi Department of Rehab. Services* case is nothing more than rank conjecture.

[9] To the extent Plaintiff attempts to show pretext through some type of pattern or practice claim, this also fails. Plaintiff has not plead a pattern or practice claim and that is not before the Court. Further, contrary to Plaintiff's constructive knowledge theory, Howard testified

Even assuming that Plaintiff had established a prima facie case, as discussed above, MDRS has a legitimate, non-discriminatory/non-retaliatory reason for its actions. Howard was not aware that Plaintiff was interested in the position in 2021 and selected Fairley for the appointment based on his experience and leadership skills. [Doc. 38-6, pp. 9-11; 23]. When, as here, "the employer provides evidence of a legitimate reason for the adverse action, ... the employee must prove the adverse action would not have occurred 'but for' the protected activity." At the pretext stage, to avoid summary judgment, the employee "must show that there is a conflict in substantial evidence on this ultimate issue." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (internal quotation marks and citation omitted). Evidence is considered "substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 561–62 (internal quotation marks and citation omitted). Plaintiff's subjective belief that she was better qualified for the position is not substantial evidence and she cannot show that she would have received the promotion "but for" her protected activity. Indeed, we know this is true because she did not receive the promotion in September 2019 when she has *not* engaged in protected activity. Plaintiff has not established that MDRS's reason is mere pretext for retaliation and this claim should be dismissed.

---

under oath that he did not learn about Miss. Code Ann. § 37-33-15 until ***after*** Plaintiff filed ***this*** lawsuit. [Doc. 38-6, pp. 14-15]. Nonetheless, the fact remains that as Executive Director, Howard maintained ultimate appointment authority for the DCS position. Miss. Code Ann. § § 37-33-15; 37-33-159.

II.   <u>Plaintiff's tortious interference claim also fails.</u>

Plaintiff failed to establish a claim for tortious interference against Howard, which requires that she prove: "(1) the acts were intentional and willful; (2) they were calculated to cause damage to the plaintiff in his lawful business; (3) they were done with the unlawful purpose of causing damage and loss; and (4) actual damage or loss resulted." *Brown v. ESAB Group, Inc.*, 2023 WL 2656755, *6 (S.D. Miss. March 27, 2023) (quoting *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001)). "If any of the factors are not met, there cannot be a finding of tortious interference …." *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 16 (Miss. 2007). Further, "[a]n individual has been held as privileged to interfere with [employment] when the defendant occupies a position of responsibility on behalf of another and interferes within the scope of that responsibility and without bad faith." *Springer v. Ausbern Const. Co., Inc.*, 231 So.3d 1065, 1069 (Miss.Ct.App. 2016) (citing *Shaw v. Burchfield*, 481So.2d 247, 254-55 (Miss. 1985); *see also Vestal v. Oden*, 500 So.2d 954, 955 (Miss. 1986)).

Attempting to show bad faith by Howard, Plaintiff, yet again, <u>without any supporting evidence</u>, resorts to simply calling him a liar.  The undisputed facts, however, establish that Howard did not act in bad faith and Plaintiff's tortious interference claim fails.

It is undisputed that Howard did not seek Hart's recommendation before appointing Fairley—nor did Hart make any recommendation for the DCS position. Howard has testified under oath that he was not aware of Miss. Code Ann. § 37-33-

15(c), which provides that the OVR Director "shall, with the approval of the executive director, recommend for appointment such personnel as may be necessary for the efficient performance of the functions of this office" until after Fairley was appointed [Doc. 38-6, p.p. 14-15]. What Plaintiff ignores, however, is that as Executive Director, Howard maintained broad conferring powers under Miss. Code Ann. § 37-33-159, which provides, "[t]he executive director shall be responsible to the board for the proper administration of the programs of rehabilitation provided under this chapter in conformity with the policies adopted by the board and **shall be responsible for appointing directors of offices and any necessary supervisors, assistants and employees**." The fact remains, as was his right as Executive Director, Howard appointed Fairley, a qualified candidate, based on his experience and leadership skills. This appointment decision in no way evinces malicious motive or bad faith on the part of Howard. Rather, this claim falls under the umbrella of claims that the Northern District has rejected in recent years. *See Jones v. Miss. Valley St. Univ.*, No. 4:20CV152-M-JMV, 2021 WL 5629227, at *8 (N.D. Miss. Nov. 30, 2021).

Plaintiff attempts an end around with a variety of unsubstantiated assertions regarding Howard's purported "constructive knowledge" of Miss. Code Ann. § 33-37-15 because of other prior litigation. Aside from her own subjective belief that Howard is a liar, Plaintiff failed to present any actual evidence showing Howard acted in bad faith. Further, Plaintiff's assertion that Howard acted in bad faith by not seeking legal advice about the requirements of Section 33-37-15 is a smokescreen. Since Howard was unaware of the law, there would have been nothing to seek legal counsel

17

about. [Doc. 38-6, pp. 14-15]. While Plaintiff avers "there is proof that the intentional acts of Howard were calculated to cause damage . . .", she wholly fails to cite any such proof and instead relies on speculation and unsubstantiated assertions. Plaintiff has not established her tortious interference claim with any supporting evidence and it should be dismissed.

III.   Conclusion

For all of the reasons set forth above, Defendants are entitled to summary judgment on all of Plaintiff's claims. Defendants respectfully request that this Court enter an Order granting summary judgment in their favor and dismissing Plaintiff's claims with prejudice.

Respectfully submitted, this the 30th day of September 2024.

**MISSISSIPPI DEPARTMENT OF REHABILITATION SERVICES and CHRIS HOWARD,**
*Defendants*

**LYNN FITCH, ATTORNEY GENERAL**
*/s/ Lindsay Thomas Dowdle*
Special Assistant Attorney General
Bethany B. Johnson
Mississippi Bar No. 10423
Lindsay Thomas Dowdle
Mississippi Bar No. 102873
P.O. Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-4245
E-mail: Bethany.Johnson@ago.ms.gov
E-mail: Lindsay.Dowdle@ago.ms.gov

## CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that I electronically filed the above and foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

    THIS the 30th day of September 2024.

    /s/ *Lindsay Thomas Dowdle*
    Lindsay Thomas Dowdle