UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENISHA BLACK                                                                    PLAINTIFF

v.                                                                CIVIL NO. 3:23-CV-426-DPJ-ASH

MISSISSIPPI DEPARTMENT OF
REHABILITATION SERVICES and
CHRIS M. HOWARD, Individually                                            DEFENDANTS

ORDER

Kenisha Black sued the Mississippi Department of Rehabilitation Services, alleging race

discrimination, sex discrimination, and retaliation under Title VII.  She also sued its Executive

Director Chris M. Howard for tortious interference under Mississippi law.  Defendants moved

for summary judgment [38], and the Court grants their motion.

I.      Background

Black (a Black woman) began working for MDRS in 2004 and currently serves as a

District Manager.  Pl.'s Dep. [38-1] at 10–12.  This lawsuit addresses Black's claim that she

should have been promoted to Director of Client Services in 2022.

Black was first interested in that position in 2019, but MDRS appointed Carol Elrod (a

White woman) without posting the vacancy.  In response, Black filed a charge of race

discrimination with the Equal Employment Opportunity Commission and later sued MDRS.

*Black v. Miss. Dep't of Rehab. Servs.*, No. 3:20-CV-643-KHJ-LGI.  That suit was dismissed on

summary judgment, and the judgment was affirmed on appeal.  *Id.*, *aff'd*, No. 22-60409, 2023

WL 4341459 (5th Cir. July 5, 2023) (unpub.).

Black again wanted the Director of Client Services position in 2022 after Elrod resigned.

But this time MDRS appointed Charles Fairley (a Black male) without posting the vacancy.

Compl. Ex. A [1-1] (EEOC charge).  Before his promotion, Fairley served as Regional Manager,

a position one level above Black on MDRS's organizational chart.  Howard Dep. [38-6] at 9.



Org. Chart [38-1] at 19.

Again aggrieved, Black filed a second EEOC charge, alleging discrimination based on

"Race, Retaliation, Sex."  Charge [1-1].  And after the EEOC issued a right-to-sue notice, she

filed this Complaint against MDRS and its Executive Director Chris Howard.  The Court has

subject-matter jurisdiction, and Defendants' motion has been fully briefed.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when

evidence reveals no genuine dispute about any material fact and the moving party is entitled to

judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[ ] and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014). But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

III.    Discussion

Black's Complaint lists four claims: (1) race discrimination (Count I); (2) retaliation (Count II); (3) sex discrimination (Count III); and (4) tortious interference (Count IV). Counts I, II, and III sue MDRS under Title VII, 42 U.S.C. § 2000(e). Count IV names Howard,

individually, and invokes state law.  Before addressing the merits, the Court must consider whether Black also pleaded a "race-plus" claim based on her status as a Black woman.

A.    Race Plus

As Black correctly contends, the Fifth Circuit recognizes "that discrimination against black females can exist even in the absence of discrimination against black men or white women."  *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980).  But MDRS says Black never pleaded that claim.  It's right.

Black states in the introduction to her Complaint that she seeks recovery under Title VII "for race discrimination, retaliation and sex discrimination."  Compl. [1] at 1.  She later pleads the four counts listed above, none of which mention race *and* sex, "race plus" or her status as a Black woman.  Count I ("race discrimination") alleges that "Defendant has discriminated against Plaintiff because of her race."  *Id.* at 5.  Count III ("sex discrimination") similarly asserts that "Defendant has discriminated against Plaintiff because of her sex."  *Id.* at 6.  And the two remaining counts are based on neither race nor sex.

A new claim presents an unclear choice under Fifth Circuit law.  The Fifth Circuit frequently notes that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).  But in *Stover v. Hattiesburg Public School District*, the Fifth Circuit found no fault in the district court's decision to address a claim raised in response to summary judgment.  549 F.3d 985, 989 (5th Cir. 2008) (collecting cases holding that new claims should be treated as motions for leave to amend); *accord Pierce v. Hearne Ind. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam).

4

The Fifth Circuit recognizes this inconsistency and has recently questioned the amendment approach. *See Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021) (noting it is "unclear how cases like *Pierce* are consistent with our rule of orderliness" and noting that construing new claims as motions for leave to amend is normally reserved for pro se plaintiffs); *accord Ford v. Anderson County*, 102 F.4th 292, 318 (5th Cir. 2024).

The *Cutrera* line is more compelling. But even if *Pierce* applies, the Court will not construe Black's summary-judgment memorandum as a motion for leave to amend. Black never sought leave to amend, the deadline to do so expired a year ago, and construing Black's brief as a motion to amend would violate Uniform Local Rules 7(b) and 7(b)(3)(C). In addition, the race-plus amendment would be futile for the same reasons the other Title VII claims fail. In short, the claim was never pleaded and is not properly before the Court, but even had it been, the Court would still grant summary judgment for the same reasons as the other Title VII claims.

B.      Count I (Race Discrimination)

Black essentially concedes her stand-alone race claim, arguing instead that she pursues a race-plus claim. In any event, because she and Fairley share the same protected class, Black cannot show she "was rejected in favor of someone outside her protected group." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004); *see also Spencer v. Sargent*, 220 F.3d 588 (5th Cir. 2000) (holding that plaintiff "cannot establish a prima facie case of racial discrimination for failure to promote because the promotion was given to a member of his same race"). Count I is dismissed.

C.      Count III (Sex Discrimination)

The sex-discrimination claim is different because Fairley is a man. Title VII prohibits employers from refusing to hire someone because of the applicant's sex. 42 U.S.C. § 2000e-

2(a)(1).  When such claims rely on circumstantial evidence, the Court follows the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Black and MDRS both presuppose that framework, so direct evidence of discrimination isn't in play.

The *McDonnell Douglas* framework is "a three-part burden-shifting scheme."  *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 356 (5th Cir.), *as revised* (Aug. 1, 2019).  Part one requires a prima facie case of discrimination.  A plaintiff meets that burden in failure-to-promote cases by showing she (1) is a member of a protected class under the statute, (2) sought a position she was qualified for, (3) was not selected, and (4) was rejected in favor of someone outside her protected group.  *Davis*, 383 F.3d at 317; *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001).

The parties hotly dispute whether Black can meet that test.  But the Court will assume, without deciding, that she can and proceed to the more apparent arguments.  That starts with whether MDRS has met its burden to show a legitimate nondiscriminatory reason for promoting Fairley.

1.    MDRS's Proffered Reason

When a plaintiff states a prima facie case, she "raises an inference of unlawful discrimination" and shifts the burden to the employer to give its "legitimate, nondiscriminatory reason" for its action.  *Blow*, 236 F.3d at 296–97.  Evidence of such a reason need only "raise[ ] a genuine issue of fact as to whether [the employer] discriminated against the plaintiff."  *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981).  A "vague and conclusional feeling about the employee" will not satisfy this test.  *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).  The employer must instead "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason."  *Burdine*, 450 U.S. at

254.  MDRS states that Fairley was selected because he was a "qualified candidate with a long

working history at MDRS and management background."  Defs.' Mem. [39] at 9.

Black says that's not enough.  And according to her, MDRS offered no evidence

supporting its assertion that Fairley was promoted because "he was 'clearly better qualified.'"

Pl.'s Mem. [42] at 16 (citing Defs.' Mem. [39] at 10).  There are two problems with that.  First,

MDRS never said it promoted Fairley because he was "clearly better qualified."  *Id.*  It argued

instead that he was qualified and that Black could not prove *she* was "'clearly better qualified'

for the position."  Defs.' Mem. [39] at 10 (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715,

723 (5th Cir. 2002)).  In fact, the Supreme Court has rejected the notion that an employer has

"the burden of persuading the court that it had convincing, objective reasons for preferring the

chosen applicant above the plaintiff."  *Burdine*, 450 U.S. at 257.  Second, MDRS did support its

reason with competent record evidence when it quoted Howard's deposition testimony

explaining why he promoted Fairley.  Defs.' Mem. [39] at 4–5 (quoting Howard Dep. [38-6] at

9).  MDRS met its burden.

> 3.    Black's Pretext Arguments

Because MDRS met its burden, "the presumption raised by the prima facie case is

rebutted."  *Burdine*, 450 U.S. at 255.  Black must therefore "demonstrate that the proffered

reason was not the true reason for the employment decision."  *Id.* at 256.  She can show such

pretext "through evidence of disparate treatment or by showing that the employer's proffered

explanation is false or 'unworthy of credence.'"  *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir.

2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).  Black

offers four primary reasons why she finds MDRS's reason false or unworthy of credence.

*Inconsistent reasons:*  Black believes the reason MDRS gave the EEOC for promoting Fairley is "inconsistent" with MDRS's summary judgment brief, which relies on Howard's deposition testimony.  Pl.'s Mem. [42] at 18.  Inconsistencies can offer proof of pretext.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 415 (5th Cir. 2007).  But the alleged distinctions between the EEOC position statement and Howard's testimony are not apparent.

In its EEOC position statement, MDRS cited Fairley's "management experience . . . in the private (for profit) sector, military, and within MDRS."  Statement [38-8] at 5.  MDRS also references his "managerial experience gained through the facility side of the Agency—Ability Works, Inc.," and "in the client services side of the agency when he was in the Regional Manger role managing the Agency's client services districts in the southern portion of the state."  *Id.*

Black tries to contrast that with snippets from Howard's testimony, but the supposedly inconsistent summary-judgment briefing tracks MDRS's position statement and even incorporates it by reference:

> [B]ased on his personal experience with Regional Manager Charles Fairley, Howard selected him for the appointment.  Specifically, "Charles was a facility manager for Ability Works of Laurel for a number of years and then he got the regional manager position and Charles was very good in leadership or is very good in leadership.  He had a military background, he had a number of years in leadership, and as the director of client services with it being one level below the director of vocational rehab, you know, it requires someone, in my opinion, that has very strong leadership skills and he had, in my opinion, has those and was able to, what I feel, lead in an effective manner."  [Howard Dep. [38-6] at 9].  Further, Howard had "heard things while he was regional manager . . . that he was very good at going out to the field and meeting with staff as they had issues . . . that he supported them and, again, that's what the director of client services, in my opinion, needs is someone with those leadership skills."  *Id.* at 10.  *See also* Ex. H, MDRS Position Statement, pp. 3–4, outlining Fairley's qualifications for the position.

Defs.' Mem. [39] at 4–3.

Are the EEOC statement and Howard's testimony identical?  No.  But they convey the same impression—MDRS selected Fairley based on his experience and leadership skills.  Black has not shown the kind of inconsistencies that suggest pretext.  *See Burrell*, 482 F.3d at 415 (finding proof of pretext when employer told EEOC reason for passing over plaintiff was lack of "purchasing experience" but argued in court that it was lack of "'bottling' experience").

***Whether Black was clearly better qualified:***  Black next insists that she was the clearly better-qualified candidate.  Pl.'s Mem. [42] at 19–20.  "[S]howing that the unsuccessful employee was clearly better qualified" will create a fact question about pretext.  *Price*, 283 F.3d at 723.  But that's a hard showing to make.  To do so, Black must offer evidence "from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (quoting *Deines v. Tex. Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)).

Black's core argument is that Fairley lacked the minimum qualifications, Black possessed those qualifications, and she "did not lack the leadership and management experience" MDRS cited.  Pl.'s Mem. [42] at 20.  For starters, Black fails to support her assertion that Fairley never received the required bachelor's degree.  *Id.* at 18.  While she points to his 2011 resume, MDRS responds with unrebutted evidence documenting a bachelor's degree earned in 2018.  *Compare* 2011 Resume [41-2] at 4; *with* Job App. [38-8] at 35 *and* Feb. 18, 2022 Memo [38-5] at 1.  There is no material dispute here.  Fairley was qualified, and Black offers no evidence rebutting Howard's testimony about Fairley's extensive managerial experience within MDRS, the military, and the private sector.

9

As for Black's experience, she points to her own commendable tenure with MDRS. Pl.'s Mem. [42] at 19–20. But saying she "did not lack" relevant experience is different from showing she was clearly better qualified. "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decision, nor . . . to transform the courts into personnel managers.'" *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 2001)). Thus, employers are "generally free to weigh the qualifications of prospective employees." *Martinez v. Tex. Workforce Comm'n-Civil Rts. Div.*, 775 F.3d 685, 688 (5th Cir. 2014). "Showing that two candidates are similarly qualified does not establish pretext under this standard." *Price*, 283 F.3d at 723. Nor would proof of "an employee's 'better education, work experience, and longer tenure with the company'" when other considerations weighed in favor of the selected candidate. *Martinez*, 775 F.3d at 688 (quoting *Price*, 283 F.3d at 723)). Black has not shown that she was clearly better qualified.

**Howard's allegedly false statements:** Black asserts that "Howard falsely claimed in his deposition that the personnel board approved that the selected candidate, Fairley, met the minimum qualifications for the position." Pl.'s Mem. [42] at 20. She appears to rely on this testimony:

> Q. Okay. The appointment of Charles Fairley to that position, I understand there's a job posting that we've gone through in Ms. Black's deposition that has minimal requirements. Did that—I guess he had to put in an application once you appointed him?
>
> A. Oh, yes, yes.
>
> Q. Right. And does that go to like the personnel board or somebody with the agency to verify that he meets the minimum qualifications?
>
> A. Yes, he does an application. Then there's a personnel transaction form that's created and then it goes to the personnel board for approval.

Howard Dep. [38-6] at 13 (original transcript pagination).

Black contrasts this testimony with an affidavit from Mississippi State Personnel Board Director Kelly Hardwick stating that the personnel board does not assess qualifications for the Director of Client Services position because it is not a state-service position. Hardwick Decl. [38-3].[1] As Defendants point out, however, Hardwick did not say Howard never submitted the application materials—whether he was required to or not. Defs.' Reply [44] at 11. And the record shows Fairley did submit an application as Howard testified. Job App. [38-8] at 35.

More to the point, even if Howard were incorrect that the personnel board verified Fairley's qualifications after receiving his application, Black still does not explain how that shows pretext. She says he lied. But to what end? There is no material dispute that Fairley was qualified. And Howard never said he hired Fairley because the personnel board liked his credentials. In fact, it's undisputed Howard first appointed Fairley and *then* had him apply for the job. Howard Dep. [38-6] at 13 ("Q. I guess he had to put in an application once you appointed him? A. Oh, yes, yes."); *see also* Fairley Verified Application [38-8] at 35.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (cited in *Moore v. Eli Lilly & Co.*, 802 F. Supp. 1468, 1474 (N.D. Tex. 1992), *aff'd*, 990 F.2d 812 (5th Cir. 1993) (considering conflicting stories about manner of plaintiff's termination from employment and holding that not just "any inconsistent testimony by the employer's agents about the circumstances surrounding an employee's termination [is] sufficient to defeat summary

---

[1] Not all state jobs are filled the same way. Nonstate service positions—like this one—do not require competitive posting and are not subject to approval by the MSPB. Hardwick Decl. [38-3] ¶¶ 4, 5.

judgment")).  The alleged discrepancy in Howard's testimony is not a genuine issue of material fact.

    ***Howard's alleged failure to follow state law:***  Finally, Black argues that Fairley's appointment violated Mississippi law because Howard needed first to obtain a recommendation from OVR Director Lavonda Hart.  Pl.'s Mem. [42] at 20–21; *see id.* at 3–4.

    As Black notes, Mississippi Code section 37-33-15(c) states that the OVR Director "[s]hall, with the approval of the executive director, recommend for appointment such personnel as may be necessary for the efficient performance of the functions of the office."  Thus, Hart should have recommended a candidate for Howard's approval.  But MDRS counters that section 37-33-15(c) directs Hart's conduct while Howard—as the Executive Director—had ultimate authority to make the decision.  Defs.' Reply [44] at 11–12.  It cites Mississippi Code section 37-33-159:  "The executive director . . . shall be responsible for appointing directors of offices and any necessary supervisors, assistants and employees."

    Neither party cited a case explaining the interplay between these code sections, and the Court found none.  Nor did they attempt to reconcile the differences through the rules of statutory construction.  Superficially, it appears section 37-33-15(c) creates a duty for the OVR Director (not the Executive Director), whereas section 37-33-159 addresses the Executive Director's ultimate authority.

    In any event, the Court finds a deeper dive unnecessary.  Even if Howard—rather than Hart—failed to follow the recommendation process outlined in section 37-33-15(c), it would not demonstrate pretext.  To start, Howard testified that he was unaware of section 37-33-15(c) before Black's suit.  Howard Dep. [38-6] at 14–15.  So if he didn't know the section existed, his failure to follow it would cast no doubt on his reasons for promoting Fairley.

Black questions Howard's professed ignorance, noting first that he could have asked MDRS's in-house attorney.  Pl.'s Mem. [42] at 30.  Maybe so, but that speculation fails to rebut Howard's sworn testimony.  Black also says Howard's "ignorance of the law is not actual ignorance, as such behavior has been proven to be a pattern and practice."  *Id.* at 27.  To make that point, Black cites two district-court orders:  *Sanders v. Mississippi Department of Rehabilitative Services*, No. 3:20-CV-830-CWR-LGI, 2022 WL 452402 (S.D. Miss. Feb. 14, 2022) and *Calvin v. Mississippi Department of Rehabilitative Services*, No. 3:15-CV-827-HTW-LRA, 2017 WL 1808068 (S.D. Miss. May 4, 2017).  But those orders mention neither Howard nor section 37-33-15(c).  And only *Sanders* involved the Director of Client Services position; *Calvin* addressed a different position that was filled after *recommendation* from an interview panel.  *Calvin*, 2017 WL 1808068, at *4.  These cases fail to show Howard lied about discovering section 37-33-15(c) after Black sued.[2]

Aside from Howard's lack of knowledge, it is undisputed that the last three Directors of Client Services—Bishop, Elrod, and Fairley—were all appointed by the Executive Director without a recommendation from the OVR Director.  Hart Dep. [41-4] at 6 (Bishop); *id.* at 8 (Elrod); Hart Dep. [38-10] at 27–29 (Fairley).  It is also undisputed that Hart historically did not make a recommendation, as section 37-33-15(c) instructed her to do.  Hart Dep. [38-10] at 13 (deposition pagination).  That means the *woman* Fairley replaced was selected with the same procedure Howard followed when promoting Fairley three years later.  There is no evidence

---

[2] Maybe there was evidence from those cases that would speak to Howard's knowledge, but Black merely cited the district-court decisions.  If there is evidence from those cases supporting her argument, then Black was required to "submit or identify" it.  *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).  She would then have to "articulate the precise manner in which the submitted or identified evidence supports . . . her claim."  *Smith ex rel. Est. of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).

Howard continued that decade-long practice to discriminate against Black because she too is a woman.

Perhaps Black is correct and Howard should have forced Hart to make a recommendation before promoting Fairley. But "[m]anagement does not have to make proper decisions, only non-discriminatory ones." *Bryan*, 413 F.3d at 478. So, for example, "[a] defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (quoting *Upshaw v. Dallas Heart Grp.*, 961 F. Supp. 997, 1002 (N.D.Tex. 1997)).

Black has not created a material dispute showing that MDRS's stated reason for hiring Fairley was "false or unworthy of credence." *Laxton*, 333 F.3d at 578 (punctuation altered). Summary judgment is therefore granted on Count III of the Complaint.

D.      Count II (Retaliation)

In Count II, Black alleges MDRS appointed Fairley and not her "because of her previously filed EEOC Charge." Compl. [1] ¶ 27. Once again, a burden-shifting framework applies. First, Black must show: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) the two are causally connected. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022). Next, MDRS presents a legitimate reason for the action. *Id*. Third, Black must demonstrate "the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Id*. (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex.*

14

*Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see Thomas v. Cook Child.'s Health Care Sys.*, No. 22-10535, 2023 WL 5972048, at *6 (5th Cir. Sept. 14, 2023) (unpub.).

As with the sex-discrimination claim, Black's prima facie case is disputed, especially given the 29 months that passed between her EEOC charge and Fairley's promotion. But as before, the Court will assume she can meet her burden and move on. And because MDRS has stated a legitimate nonretaliatory reason for its decision, the final question is pretext.

*Qualifications:* Black tries to prove pretext primarily with the same flawed argument that she "was more qualified because she actually met the minimum qualifications for the job, whereas Fairley did not." Pl.'s Mem. [42] at 26. As noted, Fairley was qualified.

*Disparate treatment:* Black also expands on another earlier argument: "Howard has a repeated pattern of selecting candidates without recommendations for this position, amongst other positions, who have not engaged in protected activities, i.e., filing an EEOC Charge." *Id.* at 25. She explains that successful candidates do "not meet the minimum qualifications, whereas those who do meet the minimum qualifications are not given the positions because they engaged in protected activity." Pl.'s Mem. [42] at 25. *Id.* Black again relies on *Sanders* and *Calvin* but this time includes *Darden v. Mississippi Department of Rehabilitative Services*, No. 3:24-CV-144-CWR-ASH.

Black's disparate-treatment argument is factually untrue here. Fairley was qualified. And neither *Sanders* nor *Calvin* involved retaliation claims at all—they were both race-discrimination cases. *See Sanders*, 2022 WL 452402, at *1; *Calvin*, 2017 WL 1808068, at *1. Nor did those holdings turn on whether the hired candidates were unqualified as Black's argument suggests. *See Sanders*, 2022 WL 452402, at *2 (rejecting argument that successful candidate was unqualified because it was based on "classic hearsay"); *Calvin*, 2017 WL

15

1808068, at *4 (finding fact questions regarding interview process). These cases do not show a pattern of hiring unqualified candidates over qualified candidates who engaged in protected activity.

Neither does *Darden*. The Court's docket shows a complaint asserting a retaliation claim, among others, but Black merely says the case is pending. Pl.'s Mem. [42] at 25. She offers no record evidence from which the Court could assess whether the successful candidate in *Darden* was unqualified. Nor are there facts to test the validity of Darden's claim or how it impacts this one. It is currently just an allegation, and Black's argument fails to go beyond the *Darden* pleadings.

Looking to Black herself as a potential comparator in 2019 (when she was passed over for this same position), she had not at that point engaged in protected activity. Because her status was the same as the successful candidate—neither had protected activities—Black is not a comparator. It also seems relevant that she failed to receive this promotion both with and without protected activity. In short, Black has not supported her disparate-treatment-pattern theory.

Black offers no substantial evidence from which a jury could reasonably find that but for her protected activity, MDRS would have promoted her instead of Fairley. So even if Black could meet her prima facie showing, she would still fall short. The Court grants summary judgment on this count as well.

E.    Count IV (Tortious Interference with Employment Relationship)

Black's last claim, lodged against Howard personally, is that he tortiously interfered with her employment relationship with MDRS by promoting Fairley. Compl. [1] ¶¶ 40–42. Mississippi law recognizes claims for tortious interference both with contracts (including at-will

16

employment), *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999), and with business relations, *Cenac v. Murry*, 609 So. 2d 1257, 1271 (Miss. 1992). The Northern District of Mississippi has held "[a] claim for malicious or tortious interference with employment is treated the same as a claim for tortious interference with contract under Mississippi law." *Jones v. Miss. Valley State Univ.*, No. 4:20-CV-152-M-JMV, 2021 WL 5629227, at *7 (N.D. Miss. Nov. 30, 2021) (citing *Guest-White v. Checker Leasing, Inc.*, 2016 WL 595407, at *5 (N.D. Miss. Feb. 11, 2016)).

The parties take this approach as well and argue the motion based on the elements of that theory:

(1) intentional and willful acts;

(2) calculated to cause damage to the Plaintiff in [her] lawful business;

(3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the Defendant which constitutes malice; and

(4) actual loss occurred.

Pl.'s Mem. [42] at 27 (quoting *Reeves v. Midcont. Exp. Pipeline, LLC*, 119 So.3d 1097, 1102 (¶ 13) (Miss. Ct. App. 2013)); *see also* Defs.' Reply [44] at 16. They also acknowledge that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with [her] principal's contractual relationship with a third person." Pl.'s Mem. [42] (quoting *Shaw v. Burchfield*, 481So. 2d 247, 254-55 (Miss. 1985)); *see also* Defs.' Reply [44] at 16.

For starters, MDRS notes that the court in *Jones* "disapprov[ed] of what it [found] to be the overuse of the malicious interference with employment cause of action in employment

discrimination and retaliation cases." *Jones*, 2021 WL 5629227, at *8; *see* Defs.' Mem. [39] at 16. Judge Mills has a point.

In any event, Black says Howard "acted with malice, in other words, that he caused Plaintiff to not be considered for the vacancy '*without right or good cause*.'" Pl.'s Mem. [42] at 29 (quoting *Morrison v. Miss. Enter. for Tech., Inc.*, 798 So. 2d 567, 575 (Miss. Ct. App. 2001) (*Morrison*'s italics)). She bases that largely on the same arguments the Court has already addressed. But as another spin on those same themes, Black claims Howard's "acts were both intentional and willful since he went beyond the scope of his employment and did not post the job as instructed *by his supervisor* at MDRS so she could recommend a person for the position." Pl.'s Mem. [42] at 32 (emphasis added). But that's backwards—Howard was the executive director of MDRS; the OVR reported to him. And, as noted, he did have authority to fill this vacancy. Miss. Code Ann. § 37-33-159.

Black adds that Mississippi Code sections 37-33-13(c)–(s) and 25-9-107–123 required Howard to post the vacancy. Pl.'s Mem. [42] at 31. There is no dispute this was not done and had not been done for years before Fairley was promoted. Hart Dep. [38-10] at 18–21. That alone undermines the argument that Howard took this approach out of malice toward Black. Regardless, it is not apparent that the code sections Black cites—most of which are definitions—create that duty for this position. And Black never highlights any language that does.

On the other hand, Black acknowledges that Howard changed the Director of Client Services position to a nonstate-service position in 2015 (some seven years before promoting Fairley). Black Aff. [41-5] ¶ 3. Such positions, according to the Executive Director of the State Personnel Board, do not require posting of vacancies. Hardwick Aff. [38-3] ¶ 4; Hardwick Letter [38-8] (stating the "Director of Client Services position is a nonstate service position

18

which does not require competitive posting"). Given that understanding, following the department's longstanding practice would not reflect malice towards Black. Nor would changing the designation seven years before Black sought the position.[3]

The Court simply finds no proof in this record to support a claim of malice or bad faith against Howard for selecting Fairley for the position or choosing not to post it. As the hiring official under state law, he was privileged to make that decision. *Shaw*, 481 So. 2d at 254–55. Even if soliciting applications were a wiser practice, it's not a tort to make debatable hiring decisions. As one district court observed in another context: "Defendant's alleged failure to follow best practices, even if true, does not demonstrate that he acted with improper or wrongful motives . . . ." *Gonzalez v. Hahl*, No. 3:17-CV-373, 2020 WL 1530741, at *9 (N.D.N.Y. Mar. 31, 2020).

Summary judgment for MDRS is proper on Count IV of the Complaint.

IV.    Conclusion

The Court has considered all arguments presented. Any not specifically addressed here would not affect the outcome. The motion for summary judgment [38] is granted, and Black's Complaint is dismissed with prejudice. A separate final judgment will issue.

**SO ORDERED AND ADJUDGED** this the 27th day of December, 2024.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Black did not argue this posting requirement to support her Title VII claims. Had she, it would fall short for these same reasons and those addressed when discussing the recommendation issue.